COMMONWEALTH vs. WIGBERTO FIGUEROA LUGO.

Essex. December 5, 1989. - January 25, 1990.

Present: LIACOS, C.J., ABRAMS, NOLAN, O'CONNOR, & GREANEY, JJ.

*Practice, Criminal*, Disclosure of identity of surveillance location, Fair trial, Motion in limine. *Evidence*, Government privilege of nondisclosure of a surveillance location. *Identification*.

At an in camera evidentiary hearing to resolve a conflict between the government's claim of privilege of nondisclosure of a surveillance location and fairness to a criminal defendant in presenting his defense, the judge should have denied the Commonwealth's motion in limine seeking to preclude the defendant from questioning a police officer on the exact location from which he had allegedly observed the defendant selling drugs where, in circumstances indicating that the prosecution's entire case rested on the officer's credibility and his ability to observe what he said he had seen from his hidden location, that his testimony was not corroborated in any respect, and that inconsistencies existed as to the location of his vantage point and whether it permitted him to have a clear view of what he claimed to have seen, disclosure of the location would have provided material evidence needed by the defendant for a fair presentation of his case to the jury. [569-574]

INDICTMENT found and returned in the Superior Court Department on December 14, 1983.

A motion in limine was heard by *Ernest S. Hayeck*, J., sitting under statutory authority, and the case was tried before him. After review by the Appeals Court a further hearing was had before *Hayeck*, J.

The Supreme Judicial Court granted a request for direct appellate review.

*Elin H. Graydon*, Assistant District Attorney, for the Commonwealth.

*Hugh Samson*, for the defendant, submitted a brief.

GREANEY, J. A jury in the Superior Court convicted the defendant of distributing heroin. The only evidence concerning the defendant's alleged activities came from Sergeant Walter Soriano of the Lawrence police department who testified that, while at an undisclosed location, he had observed the defendant selling drugs in a parking lot. In the initial appeal, the Appeals Court considered the correctness of a pretrial ruling by the judge that allowed the Commonwealth's motion in limine to prohibit the defendant's counsel from questioning Soriano on the exact location from which he made his observations. See *Commonwealth* v. *Lugo*, 23 Mass. App. Ct. 494 (1987). The Appeals Court vacated the ruling on the motion in limine and directed the judge to hold' an in camera evidentiary hearing to determine whether the defendant should have been entitled to disclosure of the secret location.

In accordance with the Appeals Court opinion, the judge held an in camera hearing at which Soriano testified and was cross-examined by the defendant's trial counsel. (The defendant had waived his right to be present.) After the hearing, the judge found that Soriano was close to the parking lot and had an unobstructed view, and, consequently, that the defendant had not been prejudiced by not knowing the exact spot from which Soriano made his observations. The judge again granted the Commonwealth's motion in limine. The defendant appealed the order granting the motion, and we allowed his application for direct appellate review. We conclude that the Commonwealth's motion should have been denied. Accordingly, we reverse and order a new trial.

We first give an account of the trial and the hearing after remand.

(a) *The trial.* At trial, Soriano testified that about 11:30 A.M. on October 13, 1983, he was dropped off at the corner of Walnut and Park Streets in Lawrence. Other officers were left to be called in when needed. Soriano placed himself in a "fixed location" to specifically observe an adjacent parking lot. He stated that he had a clear, unobstructed view of that parking lot. According to Soriano, there were only two peo-

ple in the lot when he began his surveillance, Hispanic males working on an automobile parked in the middle of the lot at the Bromfield Street end. Later, at approximately 11:45 A.M., a 1968 Volvo automobile, which Soriano had observed earlier with the defendant driving, drove into the parking lot and backed up to a fence along the Walnut Street end.

Soriano testified that the defendant and another man, identified as David Carrion, got out of the automobile. The defendant walked to the rear, opened the trunk and took out a small plastic bag. He closed the trunk, went to the passenger-side rear tire, leaned down and placed the bag near that tire. Soriano stated that he observed "approximately four or five people at different times — but within a short period of time —come in, walk into the parking lot . . . [and] talk to either Mr. Lugo or Mr. Carrion, [who] would immediately approach the individual." He testified that he saw the exchange of money. According to Soriano, "[t]he subject would give either Mr. Carrion or Mr. Lugo some money [and] [o]ne of them would go to the rear of the vehicle, lean down, take something out, go back towards the individual, and hand [it] over." Soriano stated that he was able to observe that the object handed over was blue. After each transaction, the defendant would go to the rear of the automobile, open the trunk and deposit the money. Soriano used a diagram of the area to depict the general area of the parking lot and nearby buildings and obstructions.

After five such transactions, Soriano communicated by radio with other officers who immediately drove to the lot. One of the officers testified that he went to the rear of the defendant's vehicle (at the passenger-side rear tire), reached underneath, and came out with a plastic bag which, upon subsequent chemical analysis, was found to contain heroin. The Volvo and its trunk were searched at some point and a wallet and money were seized from the trunk.

The defendant and one Angel Fernandez testified for the defense. The defendant denied any knowledge or association with drugs and stated that he had come to the Park Street area to see Jose Valentine for whom he occasionally worked.

Valentine was not home but was expected back. The defendant stated that in order to use his time constructively while waiting for Valentine he returned to his vehicle and began replacing the vehicle's antenna with another antenna he had bought earlier. Because Valentine had not arrived by the time the defendant had finished replacing the antenna, the defendant testified that he began to pass the time talking with Fernandez and his brother about "mechanic" things.

According to the defendant, the police arrived somewhere between 11 and 11:30 A.M., by which time the parking lot was filled with people. The defendant stated that the sight of police sent almost everyone in the lot running in all directions. The defendant testified that one of the police officers detained him while the others searched the entire area. Among the officers was Soriano, whom the defendant knew. According to the defendant, eight months prior to the incident, while the defendant was driving his nephew to school, Soriano had stopped him, searched his vehicle, asserted that the defendant's brother was a drug dealer, and threatened to get the defendant too.

Fernandez corroborated the defendant's testimony as to the events in the parking lot. He testified that when the police came, the other people in the lot ran away, and that the police had conducted a general search of the area. Fernandez indicated that the police looked into garbage cans and other vehicles, suggesting, perhaps, that the officers conducting the search did not know exactly where to look.

Based on the testimony, the defendant's counsel argued to the jury that the parking lot allegedly under surveillance was a "hangout"; that there was a crowd of people there on the morning of October 13, 1987; that Soriano did not see any undisguised transfer of cash for packets as he had claimed; that the most Soriano had seen was suspicious activity obscured by people, trees, and buildings; and that based on suspicion only, Soriano, along with the other officers, had searched the area and detained the defendant, whom Soriano suspected of drug activity because the defendant's brother was a known drug dealer. Defense counsel supported these

arguments with the points noted below,[1] but the core of the defendant's claim — that Soriano could not have seen all that he said he saw, and that inconsistent statements that had been brought out in the course of the trial could not be explained away — found defense counsel speculating as to where Soriano might have been, rather than arguing from certain knowledge.

(b) *Remand hearing.* At the in camera hearing on remand, Soriano identified his location and again testified that from that location, he had a clear, unobstructed view of the defendant distributing drugs. During cross-examination by the defendant's counsel, however, inconsistencies surfaced in Soriano's testimony with respect to: (1) whether he had been let off at the corner of Walnut and Park Streets as he had previously claimed or at the corner of Bromfield and Park Streets; (2) whether his alleged surveillance location was the first house off Walnut Street or the second; (3) whether a fence at the Walnut Street end of the parking lot obscured his view because it was higher than the defendant's car; (4) whether he was only a few feet from the incident or was in fact as far away as fifty feet (Soriano conceded that the second house off Park Street on the Walnut Street side of the parking lot, one with no view of the defendant's car and one where the defendant argued at trial Soriano had to have been, if anywhere, would maybe have been forty to fifty feet from the defendant's car); and (5) whether he had observed

---

[1]Defense counsel argued (1) previous statements and testimony of Soriano that he saw the defendant place the plastic bag containing the packets by the left rear tire rather than the right; (2) that the rough diagram of the scene drawn by Soriano deceptively portrayed the buildings in the area as having equal and unobstructed views of the parking lot; (3) inconsistencies in the testimony of the officers present at the search of the Volvo regarding what was found and where; (4) that there was no inventory made of items found in the Volvo or on the defendant; (5) that the police made a general unfocused search of the parking lot more suggestive of a "fishing expedition" than a precise response to Soriano's observations; and (6) that the police did not arrest any alleged purchasers.

the defendant place a bag under or near the left rear tire or the right rear tire.

Notwithstanding these discrepancies, and the inconsistencies brought out at trial, the judge concluded that "Sergeant Soriano had a clear and unobstructed view at close range and . . . was able to see those things that he said he saw." Based on this finding, the judge concluded that the defendant had not been prejudiced by not knowing the exact surveillance location, and that the Commonwealth's interest in preventing disclosure outweighed the defendant's interest in knowing the location.

With this background in mind, we turn to the applicable law. As the Appeals Court opinion noted, counsel have accepted the existence of a so-called "surveillance location privilege" and recognize that it has been analogized to the well-established informer's privilege. *Commonwealth* v. *Lugo*, 23 Mass. App. Ct. 494, 497 (1987). Policy reasons comparable to those which favor the nondisclosure of an informer support the privilege to keep a surveillance location secret. *Id.* at 498.

In *Roviaro* v. *United States*, 353 U.S. 53, 60 (1957), the leading case in this area on the informer's privilege, the United States Supreme Court recognized that privileges of this type are limited by a fundamental requirement of fairness. In general, "[w]here . . . disclosure . . . is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." *Id.* at 60-61. The Court in *Roviaro* distinguished between the need for disclosure at a pretrial suppression hearing and at the trial proper (which was the situation presented in *Roviaro*), and, as to the latter, observed that the privileged material "*must* be disclosed whenever [it] *may* be relevant and helpful to the accused's defense" (emphasis supplied). *Id.* at 61-62. In the last analysis, the Court declined to formulate a fixed rule on the subject. Instead, it noted that "[t]he problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular cir-

cumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the [privileged] testimony, and other relevant factors." *Id.* at 62.

Cases which have considered the subject have maintained the distinction between a demand for disclosure at a pretrial hearing, where the issue is probable cause for arrest or a search, and a demand for disclosure at trial, where the issue is the defendant's ultimate guilt or innocence. Compare *McCray v. Illinois*, 386 U.S. 300 (1967); *Scher v. United States*, 305 U.S. 251 (1938); *United States v. Green*, 670 F.2d 1148 (D.C. Cir. 1981); *Hicks v. United States*, 431 A.2d 18 (D.C. App. 1981); *State v. Burnett*, 42 N.J. 377 (1964) (disclosure not required within the context of a suppression hearing), with *Roviaro v. United States, supra*; *Commonwealth v. Johnson*, 365 Mass. 534 (1974); *Commonwealth v. Crespo*, 3 Mass. App. Ct. 497 (1975), overruled on a different point in *Commonwealth v. Niziolek*, 380 Mass. 513, 518-519 (1980); *Commonwealth v. Ennis*, 1 Mass. App. Ct. 499 (1973); *Portomene v. United States*, 221 F.2d 582 (5th Cir. 1955); *United States v. Conforti*, 200 F.2d 365 (7th Cir. 1952), cert. denied, 345 U.S. 925 (1953); *Sorrentino v. United States*, 163 F.2d 627 (9th Cir. 1947) (disclosure required within the trial context). Indeed, we have noted that "[i]t is revealing of the courts' approach that nondisclosure is rather readily countenanced at pre-trial hearings, but not so at the trial itself." *Commonwealth v. Johnson, supra* at 545.

The cases that have required disclosure at trial have all done so on a standard of materiality or something roughly akin thereto. See *Commonwealth v. Johnson, supra* ("helpful"); *Commonwealth v. Ennis, supra* ("important," "material," "relevant," "helpful"); *Portomene v. United States, supra* ("material"); *Sorrentino v. United States, supra* ("material"); *State v. Burnett, supra* ("essential," "material"). See also J. Wigmore, Evidence § 2374, at 768 (McNaughten rev. 1985) ("[D]isclosure will be compelled if the [privileged information] is . . . material . . . on the issue of guilt"). Further, "material" does not necessarily mean ul-

timately conclusive. "There is . . . no requirement that a defendant, denied access to evidence that might prove helpful in his defence, must make a specific showing of just what the evidence would have proved and how far he was prejudiced by the withholding." *Commonwealth* v. *Johnson, supra* at 547. In the informer situation, where the informer is an active participant in the alleged crime or the only nongovernment witness, disclosure usually has been ordered. *Roviaro* v. *United States, supra*; *Commonwealth* v. *Ennis, supra*; *Portomene* v. *United States, supra*; *United States* v. *Conforti, supra*. Also involved is the corollary principle that "[a] fair and full cross-examination to develop facts in issue or relevant to the issue is a matter of absolute right and is not a mere privilege to be exercised at the sound discretion of the presiding judge, and the denial of the right is prejudicial error." *Commonwealth* v. *Johnson, supra* at 543, quoting *Gossman* v. *Rosenberg*, 237 Mass. 122, 124 (1921).

In the *Ennis* case, for example, the crime charged was the sale of marihuana. A police officer testified that he bought the drug from the defendant at a prearranged sale having met the defendant after a conversation with an informer. On cross-examination, the police officer acknowledged that the informer had also been present at the sale. The defendant denied that any sale had occurred. On these facts, where the issue was whether the police officer was telling the truth or whether the defendant was telling the truth, the testimony of the informer was deemed by the court to be "important to a fair determination of the case[,]" and the withholding of his identity was determined to be error. *Commonwealth* v. *Ennis, supra* at 503. *Ennis* has been cited with approval by this court in *Commonwealth* v. *Johnson, supra* at 545, and in *Commonwealth* v. *Swenson*, 368 Mass. 268, 276 n.8 (1975), and has been relied upon in a case involving an implied surveillance location privilege. *Commonwealth* v. *Crespo, supra* at 500.

We come then to the application of the law to this case. In connection with remand, the Appeals Court framed two alternatives for the judge to consider. "If the location is such

that Soriano was close to the parking lot and had an unob-
structed view, the judge may conclude that the defendant
was not prejudiced by not knowing the exact spot. . . . If,
however, Soriano's view was obstructed, or was distant from
the transaction, principles of fairness will require that the de-
fendant be able to put these facts to a jury." (Citations omit-
ted.)[2] *Commonwealth* v. *Lugo,* 23 Mass. App. Ct. 494, 500-
501 (1987). In connection with the second alternative, the
Appeals Court pointed out (with citation to relevant author-
ity) that "[i]n weighing the interests of both the defendant
and the government, the judge is to consider that the stan-
dards of disclosure at trial are more demanding than at a
suppression hearing . . . and that here Soriano's testimony is
crucial to the government's case and not merely corrobora-
tive" (citations omitted). *Id.* at 501.

The judge appears to have considered the alternatives
posed by the Appeals Court as mutually exclusive, and as
requiring a finding of fact on his part of one or the other. In
keeping with the first alternative, the judge concluded that
Soriano had given credible testimony as to his secret location

---

[2]With respect to the first quoted alternative, the Appeals Court cited
(*supra* at 500) four cases which differ from this case. In two of those
cases, the issue of disclosure was raised within the express context of a
suppression hearing, rather than a trial. *United States* v. *Jenkins,* 530 F.
Supp. 8, 9 n.* (D.D.C. 1981); *United States* v. *Green, supra.* In the re-
maining two, although the issue of disclosure was raised within the trial
context, neither defendant had made a preliminary showing of need. In the
first, defendant "offered no showing that there was any vantage point in
the relevant area that could not permit a clear view of [defendant's] activi-
ties." *Thompson* v. *United States,* 472 A.2d 889, 891 (D.C. App. 1984).
In the second, defendant "offered no reason why [any further knowledge of
the surveillance location] might be important." *United States* v. *Harley,*
682 F.2d 1018, 1021 (D.C. Cir. 1982). The *Harley* defendant knew the
house number of the surveillance location, its approximate height above
street level, and its distance from the incident allegedly observed. *Id.*
Moreover, the government provided the jury a videotape taken at the time
of the surveillance which "indisputably show[ed] the view the officers in
the surveillance post had, the distance, the angle, and the existence or non-
existence of obstacles in the line of sight." *Id.* The Appeals Court opinion
mentions some of these distinctions. *Commonwealth* v. *Lugo, supra.*

and, as a result, that the defendant was not entitled to disclosure.

The more proper inquiry, in our view, concerns whether disclosure would have provided material evidence needed by the defendant for a fair presentation of his case to the jury. We conclude that it would have provided such evidence. The entire prosecution case rested on Soriano's credibility, and his ability to observe what he said he had seen from his hidden location. Soriano's testimony was not corroborated in any respect. The defendant made a strong preliminary showing that he might have need of the privileged information. The in camera hearing on remand established several inconsistencies as to the location of Soriano's vantage point and whether it permitted him to have a clear view of what he claimed to have seen. Added to the inconsistencies that had been brought out at trial, the missing information was significant. The application of the privilege hampered cross-examination of Soriano on the key factual issue before the jury. In the circumstances, "a fair determination of [the] cause," *Roviaro* v. *United States, supra* at 61, required that the defendant's counsel be furnished with the exact place where Soriano claimed to be so that counsel would have been able to inquire on the subject in a concrete manner without being left to speculate about rough (and possibly misleading) diagrams and hypothetical locations. In the last analysis, it would be for the jury in this case to determine, in light of fully disclosed evidence, whether Soriano had a clear or an obstructed view or no view at all. Finally, we see no basis in the Commonwealth's argument about the procedural aspects of this appeal to deny the defendant the review we have given him.

The order allowing the Commonwealth's motion in limine is reversed. The judgment is reversed, and the verdict set aside. The case is remanded for a new trial.

*So ordered.*