COMMONWEALTH vs. NEAL HEALIS.

No. 90-P-1296.

Middlesex. September 6, 1991. - November 14, 1991.

Present: ARMSTRONG, SMITH, & GILLERMAN, JJ.

*Practice, Criminal,* Disclosure of identity of informer, Fair trial, Required finding. *Evidence,* Informer. *Controlled Substances.*

In a criminal case, the judge erred in denying the defendant's motion to require the Commonwealth to disclose the identity of a confidential informant, where the informant was an active participant in the alleged crime and the only nongovernment witness to events that gave rise to the defendant's arrest and where, in fact, it was the informant who arranged the meeting at which the defendant's arrest occurred and who acted under the direction of the police at all times just prior to the defendant's arrest. [529-532]

At the trial of an indictment charging the defendant with trafficking in cocaine in excess of fourteen grams, the judge correctly denied the defendant's motion for a required finding of not guilty, where the evidence was sufficient for the jury to find that the defendant intended to traffic in cocaine. [532-533]

INDICTMENT found and returned in the Superior Court Department on July 18, 1989.

A pretrial motion for disclosure of identity of informant was considered by *John Paul Sullivan,* J., and the case was tried before him.

*Richard B. Klibaner* for the defendant.

*Kevin J. Mahoney,* Assistant District Attorney, for the Commonwealth.

SMITH, J. The defendant was convicted by a jury of trafficking in cocaine in excess of fourteen grams (G. L. c. 94C, § 32E[*b*][1], as amended by St. 1988, c. 124). On appeal, he claims that the judge committed error when he denied the defendant's motion for disclosure of the full name and address of an informant. The defendant also contends that the

evidence was insufficient for the jury to find that the defendant intended to traffic in cocaine.

At trial, it was the Commonwealth's theory that the defendant, a seller of cocaine, had arranged to meet a buyer in Cambridge and went there to deliver cocaine to him. The buyer was, in fact, a police informer.

At 8:30 P.M. on May 20, 1989, in Cambridge, a police officer met and searched a man (informant) whom he had known for four months. Finding no drugs on him, the police officer and the informant entered a restaurant. The informant remained with the police officer until 9:00 P.M. when the defendant drove up in his automobile and parked across the street from the restaurant. A second police officer, stationed on the same side of the street, watched the defendant from twenty to thirty feet away. Two other detectives were stationed in the area.

The defendant looked around and appeared to be surveying the area. The informant left the restaurant, crossed the street, and approached the defendant's automobile. The informant's hands were empty and at his side, and the police officers did not observe him giving anything to the defendant. The informant exchanged words with the defendant and then returned to the restaurant. Once inside the restaurant, the informant and the police officer had a conversation, and the police officer instructed the informant to leave.

Meanwhile, the defendant drove down the street, made a U-turn, and parked directly in front of the entrance to the restaurant. The police officer, stationed in the street in an unmarked cruiser, followed the defendant and parked about forty to fifty feet behind the defendant's automobile. The police officer in the restaurant left and gave a prearranged signal to the other police officers.

The police officer who was parked behind the defendant pulled up alongside the defendant's automobile. He observed the defendant reach under his front seat. The police officer drew his gun, identified himself, and ordered the defendant out of the automobile. The police officer then reached under the front seat of the defendant's automobile and removed a

clear plastic bag of 27.86 grams of 37 per cent pure cocaine in solid "rock" form. The defendant had thirty-five dollars on his person.

The defendant's story was as follows: Earlier on May 20, 1989 (the day he was arrested), the defendant had arranged to meet an individual whom he knew by the name of "Orlando," not to sell cocaine to him, but rather to buy cocaine from him for his (the defendant's) personal use. He had met Orlando about three or four years before and had purchased cocaine from him on several occasions over the years. The amount of cocaine that the defendant purchased varied depending on how much money he had with him.

On the day he was arrested, the defendant had thirty-five dollars and went looking for Orlando in order to buy some cocaine from him. He found Orlando, and the two men made arrangements to meet that evening in front of a restaurant at which time the defendant would buy some cocaine from Orlando.

The defendant arrived at the agreed location and parked across from the restaurant. At first he did not see Orlando, but a few minutes later Orlando came running out of the restaurant, leaned into the defendant's automobile, dropped a bag onto the floor, and ran back into the restaurant. The defendant looked briefly at the bag and assumed it was cocaine. The bag, however, contained a greater amount of cocaine than the defendant intended to purchase. The defendant made a U-turn and drove his automobile up to the front of the restaurant. As he did so, he shouted to Orlando, "What's going on?" The defendant was then arrested.

1. *Motion to disclose name and address of "informant."* Prior to trial, the defendant filed a motion requesting that the judge order the Commonwealth to divulge the name, address, and criminal record of the individual who first approached his automobile on the evening he was arrested. In an affidavit accompanying his motion, the defendant stated that the individual was known to him only by his first name, "Orlando." He did not know his last name or residential address; therefore, he was unable to summon him as a witness.

The Commonwealth relied on the government's privilege not to disclose the identity of an informant. The judge denied the motion.

"The government's privilege not to disclose the identity of an informant has long been recognized in this Commonwealth." *Commonwealth* v. *Douzanis*, 384 Mass. 434, 441 (1981). See also *Commonwealth* v. *Amral*, 407 Mass. 511, 516-517 (1990). "It was originally justified as a means of encouraging 'every citizen' in his 'duty . . . to communicate to his government any information which he has of the commission of an offence against its laws.'" *Commonwealth* v. *Ennis*, 1 Mass. App. Ct. 499, 501 (1973), quoting from *Worthington* v. *Scribner*, 109 Mass. 487, 488 (1872). The privilege, however, is not absolute, particularly where a demand for disclosure is made at trial and the issue is the defendant's ultimate guilt or innocence. *Roviaro* v. *United States*, 353 U.S. 53, 60-61 (1957). *Commonwealth* v. *Lugo*, 406 Mass. 565, 571 (1990). In general, at trial, an informant's identity must be disclosed "[w]here [such] disclosure . . . is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause . . . ." *Commonwealth* v. *Nelson*, 26 Mass. App. Ct. 794, 797 (1989), quoting from *Roviaro* v. *United States*, 353 U.S. at 60-61.

Here, the defendant was charged with a violation of G. L. c. 94C, § 32E(*b*)(1). "[T]he conduct prohibited by the statute . . . is the knowing or intentional manufacture, distribution, dispensing or possession with intent to manufacture, distribute, dispense or bring into the Commonwealth [a net weight of fourteen grams but less than twenty-eight grams] of cocaine . . . ." *Commonwealth* v. *Chappee*, 397 Mass. 508, 522 (1986). His defense consisted of a denial that he possessed the cocaine with an intent to "distribute [or otherwise] dispense" the drug. Also, implicit in his testimony was a claim that he was "set up" by the informant (and by the police), whereby the informant planted in the defendant's automobile cocaine far in excess of the amount he intended to buy.

The questions before the jury were clear — was the defendant a buyer of a small amount of cocaine for personal use or a seller of a large amount of cocaine? Further, who was telling the truth — was it the police officers who testified that the informant did not place anything in the defendant's automobile, or was it the defendant, who testified that the informant had dropped cocaine into his automobile? The testimony of the informant, obviously, was critical.

Here, the informant was an active participant and the only nongovernment witness to events that gave rise to the defendant's arrest. See *Commonwealth* v. *Lugo*, 406 Mass. at 572 ("In the informer situation, where the informer is an active participant in the alleged crime or the only nongovernment witness, disclosure usually has been ordered"). Also, it was the informant who arranged the meeting at which the defendant's arrest occurred and who acted under the direction of the police at all times just prior to the defendant's arrest. See *Commonwealth* v. *Ennis*, 1 Mass. App. Ct. at 503 ("[T]he informer was the only other person present at the sale [of narcotics] and, what is more, arranged the meeting at which it occurred. On these facts disclosure was required").

The Commonwealth, however, argues that disclosure of the informant's identity is not required because the defendant failed to show how the lack of the informant's testimony prejudiced him. But "[t]here is . . . no requirement that a defendant, denied access to evidence that might prove helpful in his defence, must make a specific showing of just what the evidence would have proved and how far he was prejudiced by the withholding." *Commonwealth* v. *Johnson*, 365 Mass. 534, 547 (1974).

We, of course, cannot tell what effect the disclosure of the informant's identity might have had on the case. "[W]e do not know what . . . [the informer's] testimony might have been or what other evidence might have been introduced if defence counsel had had the benefit of [the identity of the informer] . . . ." *Commonwealth* v. *Ennis*, 1 Mass. App. Ct.

at 504, quoting from and paraphrasing *Commonwealth* v. *Balliro*, 349 Mass. 505, 517 (1965).

On these facts, we hold that disclosure of the informant's identity was essential to a fair determination of the case.[1]

2. *Denial of motion for required finding of not guilty.* The defendant argues that the trial judge erred in denying his motion for a required finding of not guilty. He contends that the Commonwealth did not introduce sufficient evidence for a rational jury to find, beyond a reasonable doubt, that he was guilty of trafficking in cocaine.

On this issue we must determine "whether, after viewing the evidence in light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" (emphasis original). *Jackson* v. *Virginia*, 443 U.S. 307, 318-319 (1979). *Commonwealth* v. *Latimore*, 378 Mass. 671, 677 (1979).

The defendant argues that there was insufficient evidence from which the jury could warrantably conclude that there was an intent to distribute. "Intent is a factual matter that may be proved by circumstantial evidence." *Commonwealth* v. *LaPerle*, 19 Mass. App. Ct. 424, 427 (1985). Possession of a large quantity of cocaine can support an inference that the defendant intended to sell cocaine. See *Commonwealth* v. *Sendele*, 18 Mass. App. Ct. 755, 758-759 (1984).

A police officer was qualified as an expert in narcotics distribution. He testified that the amount (27.86 grams) and purity (37 per cent) of the cocaine was consistent with an intent to distribute.[2] In addition, the evidence showed that the cocaine was in "rock" form, which also raised an inference that the cocaine was being held for distribution. See

---

[1]On appeal, the defendant also argued that the privilege did not apply because he was aware that "Orlando" was the informant. See *Commonwealth* v. *Curcio*, 26 Mass. App. Ct. 738, 747 (1989)("With the informer's identity known, the Commonwealth could not claim the 'informer's privilege' . . ."). Trial counsel did not make the argument below and, consequently, we do not consider it now. *Commonwealth* v. *Lazarovich*, 410 Mass. 466, 476 (1991).

[2]The expert witness also testified that a user of cocaine "[g]enerally" would have a smaller amount.

*Commonwealth* v. *Sendele*, 18 Mass. App. Ct. at 758. There was no error in denying the defendant's motion. Compare *Turner* v. *United States*, 396 U.S. 398, 423 (1970)(14.68 grams of a cocaine and sugar mixture not sufficient to support conviction of distribution); *Commonwealth* v. *Sendele*, 18 Mass. App. Ct. at 756, 758 (14.4 grams of 37 per cent pure cocaine in rock form, standing alone, might not be sufficient to justify inference of intent to distribute).

There must be a new trial because of the denial of the defendant's motion to obtain the name and address of the informant.

*Judgment reversed.*
*Verdict set aside.*