Lowy, J.
The defendant, Pedro Saletino (“defendant”), is charged with several counts of trafficking cocaine. A paid confidential informant (“Cl”) was a percipient witness to the transactions for which the defendant is charged. The Commonwealth has previously turned over the informant’s name, as well as the terms of his remuneration for his participation in these transactions and other discovery information. The defendant, through his counsel’s due diligence, is aware of other investigations in which the informant was involved with the federal government. Now facing trial after absenting himself from the jurisdiction for over seven years, the defendant seeks discovery of all other cases in which the informant has worked undercover for the government.
I. FACTUAL BACKGROUND
This Court held a hearing on the defendant’s discovery motion on February 25, 2003. The Court now summarizes the procedural posture of the case, the allegations of the Commonwealth, and the assertions of the defendant pertinent to the motion.
On at least two prior occasions, the Cl involved in this case worked with the Massachusetts drug task force here involved, resulting in the conviction of several men charged with trafficking cocaine, back to 1991. Affidavit Supporting August 5, 1993 Search Warrant.
In approximately May of 1993, the Cl informed officers that the defendant was selling cocaine. As a result of an investigation, the defendant was arrested by the officers in June 1993 in Chelsea for trafficking thiriy-five baggies of crack cocaine. The defendant was released on bail. In July 1993, the Cl then informed the officers that the defendant continued to sell cocaine. On August 3, 1993, the Cl arranged for an undercover officer to accompany the Cl to meet the defendant and buy cocaine. On that date, the Cl and the officer met the defendant in East Boston. All three traveled to Lynn, where the Cl and the defendant went into the apartment where the drugs were located. The Cl purchased sixty-two grams of cocaine, while the officer waited in the car.
Over the following three days, August 4-6, 1993, the officer, the Cl, and the defendant made arrangements for the officer to buy a kilogram of cocaine. All parties traveled to Cape Cod, to “check out” the buying officer. The kilo purchase took place in Lynn on August 6, 1993, with the defendant, the Cl and the undercover officer all participating. The task force entry team arrived and arrested various defendants, including defendant Saletino. The defendant was charged with trafficking in over twenty-eight grams of cocaine, trafficking in over 200 grams of cocaine, and conspiracy. On August 7, 1993, the defendant was released on $1,000 bail, and then defaulted. He was returned from the state of Washington on a Governor’s warrant in July 2001. He had previously been convicted in Alaska of false application for a passport.
At all times during the August 1993 drug deals, the Cl was the only non-government participant involved in the police task force investigation. Given the Cl’s status as a percipient witness, the Commonwealth provided the Cl’s name to Saletino’s co-defendant in August 1994. The Commonwealth has also informed the defendant that the Cl was paid $1,000 for his cooperation in this investigation, provided a list of his offenses from probation records, and offered to have the Cl available to speak with defendant’s prior counsel, though the Cl exercised his right not to do so. Through his own diligence, counsel for the defendant has identified a federal case in which the Cl also assisted the government. United States v. Sidhom, 142 F.Sup.2d 150 (2001). The federal case stemmed from events that occurred in the summer of 1998, and involved a motion for downward departure from the sentencing guidelines. Id. at 152. The United States District Court Judge’s opinion detailed the Cl’s assistance in a money laundering investigation. Id. The factual findings state that the Cl had been a “long time confidential informant of various state and federal law enforcement agencies” and had received “both financial compensation, as well as protection from a 1991 deportation order.” Id. The court found that the *313 Sidhom defendant had been the focus of a “sting operation” based on two isolated money laundering transactions completed under the guise of personally assisting the CI. Id. at 153-54.
Defense counsel, in an affidavit, states that he has also learned, through the Sidhom case and defendant’s prior counsel in the case at bar, that the Cl worked as an informant for the Federal Bureau of Investigation, the Drug Enforcement Administration, the Immigration and Naturalization Service, the Massachusetts State Police, and the Quincy Police Department, beginning in at least 1990, and extending at least up until April 2000. Defendant’s counsel also asserts that the Cl has received substantial financial payment, cooperation with his own prosecution, and deportation relief.
The defendant seeks a list of all cases in which the Cl has assisted in law enforcement investigation. Based on the information already known to him about the Cl, the defendant has asserted that he intends to put forth a defense of entrapment and to impeach the credibility of the CL The record contains an affidavit from defendant’s counsel explaining his research and strategy for the case. There is no affidavit from the defendant himself. Further, the defendant makes no statement, either in affidavit or pleading form, regarding the basis for, the use of, or the necessity for this additional discovery material. The Commonwealth argues that the defendant has put forth no reason to warrant awarding such a broad order for additional discovery, particularly when balanced against the informant privilege and the government’s interest in maintaining the Cl’s ongoing safety.
II. RULINGS OF LAW
A. Pretrial Discovery
Mass.R.Crim.P. 14 establishes mandatory as well as discretionary discovery procedures. The mandatory rules include the requirement that the prosecutor turn over any exculpatory evidence. Rule 14(a)(1)(C). Discretionary discovery material includes a wide array of other possible items, such as the additional Cl information requested in this motion. Rule 14(a)(2). Defendants do not have unlimited access to witnesses and documents in advance of trial. Commonwealth v. Oliveira, 438 Mass. 325, 339 (2002). Section (a)(2) motions must demonstrate that the items requested are “material and relevant” to the issue. Id.; Oliveira, 438 Mass. at 339.[1] In addition, when submitting a motion for discovery, the motion must be accompanied by an affidavit based on personal knowledge.[2] Rule 13(a)(2); Commonwealth v. Pope, 392 Mass. 493, 497 (denying pretrial motion submitted without an affidavit from defendant). “The requirement of really adequate affidavits [with pretrial motions] should be strongly enforced as a matter of good judicial administration.” Commonwealth v. Benjamin, 358 Mass. 672, 676 n.5 (1971).
In this case, defendant’s motion was accompanied by an affidavit from defense counsel, detailing counsel’s investigatory work to uncover the Cl’s past activities, his intent to raise the defense of entrapment, and his intent to impeach the Cl’s credibility at trial via evidence of bias. With regard to bias, while an affidavit of personal knowledge from the defendant might have carried more weight, defense counsel’s attestation to issues within his personal knowledge suffices. Based on defense counsel’s affidavit, the Court will consider the motion for further discovery relative to issues of bias and credibility.
The assertion of entrapment in this case, however, is different. Entrapment requires statements that possess some “indicia of inducement.” Commonwealth v. Tracey, 416 Mass. 528, 536 (1993). Examples of facts that satisfy this low threshold of proof include “aggressive persuasion, coercive encouragement, lengthy negotiations, pleading or arguing . . ., [and] repeated or persistent solicitation . . .” Id. When the case involves a middleman, such as a Cl, “entrapment will not arise in the absence of some evidence showing that the government’s inducement of the middleman has been communicated to the defendant or evidence showing that the middleman was consciously recruited by the government to induce the defendant to join in the commission of the crime.” Commonwealth v. Silva, 21 Mass.App.Ct. 536, 548 (1986).
In this case, there is no affidavit from the defendant. Thus, the Court has no statement of personal knowledge raising the specter of inducement to consider. Inducement in this situation is not just related to how the Cl might have been induced by the police, but must be related to how the Cl may have in turn induced the defendant. While the entrapment threshold is low, procedural rules still require affiant statements, as well as an articulation of relevance. Defense counsel statements of intent to raise an entrapment defense do not suffice, as they do not provide personal knowledge of inducement by the Cl to the defendant; an affidavit of the defendant is required. United States v. Sharp, 778 F.2d 1182, 1187 (6th Cir. 1985) (holding that defendant must put forth evidence supporting entrapment, not defense counsel, when seeking to pierce the privilege and discover the identify of a Cl). The court in Sharp agreed with the government’s argument that the oral offer of proof from defense counsel for the entrapment defense was “simply not a sufficient showing to meet the defendant’s burden of disclosure.” Id. at 1185. Consequently, the court denied the defendant’s motion for further informant information, as considered for discovery relative to entrapment.
Confidential Informant Privilege
When considering Rule 14 discovery motions, the court must assess whether any privileges apply to the specific items requested. Commonwealth v. Pelosi, 55 Mass.App.Ct. 390, 398 (2002) (review granted 438 *314 Mass. 1106 (2003)); Commonwealth v. Bishop, 416 Mass. 169, 184 (1993). Statements made to prosecutors regarding enforcement of the law are “privileged and confidential.” District Attorney for the Norfolk District v. Flatley, 419 Mass. 507, 510 (1995). Under this rule, the identity of a government informer is also protected. Commonwealth v. Douzanis, 384 Mass. 434, 441 (1980). This “privilege serves a substantial, worthwhile purpose in assisting the police in obtaining evidence of criminal activity. The privilege, which is not absolute, should be respected as far as reasonably possible consistent with fairness to a defendant.” Id. The privilege extends not only to the name of the informant, but also to the “details that would in effect identify the informant.” Commonwealth v. John, 36 Mass.App.Ct. 702, 706 (1994).
The defendant carries the burden of producing evidence sufficient to overcome the privilege, by making an offer to assess the “materiality and relevancy” of the disclosure. Commonwealth v. Lugo, 406 Mass. 565, 574 (1990); Commonwealth v. Swenson, 368 Mass. 268, 276 (1975). “It is only when this burden is met that the balancing test of the Roviaro case, wherein the respective interests of the prosecution in nondisclosure and the defendant in marshaling a defense are weighed, comes into play.” Swenson, 368 Mass. at 277 (citing Roviaro v. United States, 353 U.S. 53 (1957)). The focus in balancing is to ensure that the defendant has access to material evidence sufficient for a “fair presentation of his case to the jury.” Lugo, 406 Mass. at 574; Commonwealth v. Youngworth, 55 Mass.App.Ct. 30, 33 (2002).
This government privilege in protecting the identify of the informant gives way, however, when the informant’s role expands to that of witness and active percipient, that is, when the Cl’s identity or communication is “relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause.” Commonwealth v. Healis, 31 Mass.App.Ct. 527, 530 (1991); see also Lugo, 406 Mass. at 570-71; Roviaro, 353 U.S. at 60. Once the informant’s identity is revealed, the privilege no longer applies, and cannot be relied upon by the Commonwealth. Pihl v. Morris, 319 Mass. 577, 579-80 (1946); Commonwealth v. McMiller, 29 Mass.App.Ct. 392, 406 (1990); Commonwealth v. Curcio, 26 Mass.App.Ct. 738, 747 (1989).
In the case at bar, the district attorney has already turned over the identity of the Cl. Consequently, the privilege to protect his identity no longer applies. The question now is: under what circumstances must the additional information sought regarding the informant’s activity on other cases be provided to the defendant, recognizing some of the information may still be privileged within other cases.
C. Additional Informant Information
This motion comes before the Court as a pre-trial motion, subject to the material and relevant standard of Rule 14. Generally, records that are not privileged are to be released to the defendant, providing they are deemed to be relevant. Pelosi, 55 Mass.App.Ct. at 398. There is no hard and fast rule of relevancy; instead, “relevancy determinations are case and fact specific.” Id. at 399. Discovery requests are assessed as to whether there is “sufficient likelihood that the requested documents or objects will contain some information that is material and relevant.” Oliveira, 438 Mass. at 339. In the absence of a privilege or objection, it is generally counsel, and not the judge, that sorts relevant wheat from irrelevant chaff amongst the Rule 14 material produced. Id. at 340. However, when “a defendant seeks access to confidential or sensitive material [that is not privileged], a balancing test is employed.” Pelosi, 55 Mass.App.Ct. at 399 (citing Commonwealth v. Tripolone, 425 Mass. 487, 489 (1997); Commonwealth v. Wanis, 426 Mass. 639, 644-45 (1998); Commonwealth v. Neumyer, 48 Mass.App.Ct. 154, 162 (1999)).
Massachusetts has yet to assess discretionary discovery of additional Cl case information, though courts in other jurisdictions have addressed the issue.[3] Consistent with this jurisdiction’s use of a balancing test for confidential and sensitive material, three other courts have uniformly applied the Roviaro balancing test[4] in this fact situation, minus the requirement of the defendant carrying the threshold burden of proof, due to the fact that the privilege has already given way with disclosure of the Cl’s name.[5] United States v. Cutler. 806 F.2d 933, 935 (9th Cir. 1986); United States v. Ridley, 814 F.Sup. 992, 997 (D.Kan. 1993); United States v. Abellaneda-Leon, 12 F.3d 1108, 1993 WL 503210 at *1 (9th Cir. 1993) (unpublished opinion).
The U.S. Supreme Court established a balancing test in Roviaro to assess the appropriateness of divulging a Cl’s identify to the defendant. 353 U.S. 53 (1956). The Court stated that the “public interest in protecting the flow of information” must be balanced against the “individual’s right to prepare his defense." Id. at 62; Lugo, 406 Mass. at 570. The balancing must be done on a case by case basis, considering the “crime charged, the possible defenses, the possible significance of the informer’s testimony, and other relevant factors.” Roviaro, 353 U.S. at 62; Lugo, 406 Mass. at 570. Disclosure lies in the discretion of the trial judge. Commonwealth v. Amral 407 Mass. 511, 518 (1990).
The government interests, which may vary by case, include “police interest in obtaining evidence of criminal activity,” and safety protection from reprisal for the informant and his or her family. Lugo, 406 Mass. at 516-17; United States v. Vargas, 931 F.2d 112, 115-16 (1991). “Revelation of the dual role played by [informants] ends their usefulness to the government and discourages others from entering into a like relationship." Amral 407 Mass. at 517.
In contrast, the defendant has a strong interest in garnering relevant information that will assist in se *315 curing a fair trial. Lugo, 406 Mass. at 570. In discovery, the defendant is not limited to information that is ultimately conclusive of guilt. Id. at 571-72. There is also no requirement that the defendant “make a specific showing of just what the evidence would have proved,” or how he or she might be prejudiced by nondisclosure, particularly when there is no way for the defendant to know what the evidence would have been. Id. at 572. This precept is closely coupled with the “absolute right” to conduct a “fair and full cross-examination.” Id.
The defendant also is entitled to impeachment evidence providing it is relevant, as it invokes the right of confrontation. United States v. Bagley, 473 U.S. 667, 676 (1985); Commonwealth v. Collins, 386 Mass. 1, 9 (1982). Bias evidence at trial can be “so significant that it is not considered a mere collateral matter but is deemed exculpatory . . .” Commonwealth v. O’Neil, 51 Mass.App.Ct. 170, 178 (2001). Indeed, “evidence of bias is almost never a collateral matter.” Commonwealth v. LaVelle, 414 Mass. 146, 153 (1993). Defendant’s “mere speculation as to the usefulness” of the requested evidence, however, will not suffice. United States v. Hemmer, 561 F.Sup. 386, 392 (D.Mass. 1983).
The defendant at bar seeks discovery of a list of “all other cases,” both before and after the present case, where the Cl was involved undercover, and his promised and realized rewards in those cases. The defendant asserts the information is relevant to the Cl’s bias and motive to lie. The defendant already has evidence of the Cl’s payment and involvement in the current case, as well as in the federal Sidhom case. 142 F.Sup.2d 150 (2001). The federal case and defense counsel’s due diligence provided an extensive history of this Cl’s activity, spanning ten years and several federal and state organizations. From the Commonwealth’s affidavit in support of the pre-arrest search warrant in this case, the defendant is also aware of two specific cases of the Cl’s involvement in the years just prior to this case. In total, this information forms a significant body of evidence for impeachment and entrapment.
While evidence of bias is certainly relevant, this Court is not simply balancing the value of discovering additional impeachment evidence against a claim by the Commonwealth that the evidence sought is cumulative. Rather, it is considering the value of discovering supplemental impeachment evidence, over and above the substantial body of impeachment evidence the defendant already has, balanced against the privileged or confidential nature of the information sought.
The trial court has discretion to exclude additional bias evidence, when “it would merely be cumulative [and repetitious] of that which is already before the jury.” Commonwealth v. Wilson, 381 Mass. 90, 116 (1980); Commonwealth v. Jackson, 388 Mass. 98, 113 (1983); Kyles v. Whitley, 514 U.S. 419, 436 (1995) (stating that “materiality of withheld evidence is judged collectively, not item by item”); Abellaneda-Leon, 12 F.3d at *1. When evidence is cumulative, “courts generally reject the contention that such evidence is material!,] so long as the defense ha[s] an adequate opportunity to impeach the witness by other means.” Jackson, 388 Mass. at 112.
Black’s defines “cumulative evidence” as “ [additional or corroborative evidence to the same point. That which goes to prove what has already been established by other evidence.” Black’s Law Dictionary 380 (6th ed. 1990). Based on a trial standard, it may well be that the evidence requested in this motion would be cumulative. While the court, prior to trial, is not in a position to know if this evidence is cumulative, it is clear that 1) the defendant has substantial information; 2) no specific suggestion of entrapment has been made by the defendant; and 3) there is insufficient justification to pierce the privilege. Given that this is a pre-trial motion, not a trial, it is subject to a lower standard for discovery of material and relevant evidence. The value of the requested supplemental impeachment evidence to the defendant, however, must still be balanced against the government’s interests, as per the Roviaro test, in this discovery context.
Three cases, cited earlier, that are factually similar to the case at bar demonstrate the application of the Roviaro balancing test to discovery requests for supplemental Cl case involvement evidence. In Cutler,[6] the trial court denied the defendant’s request for additional information regarding the Cl’s prior unrelated investigations, which the defendant intended to use for impeachment purposes. Cutler, 806 F.2d at 935. The defendant had already been given the Cl’s “name, birth date, criminal record, relationship with the FBI and transcripts of recorded conversations involving [the Cl].” Id. The Sixth Circuit found that the trial court had correctly applied the Roviaro factors. Id. The court balanced the government interest in maintaining the Cl’s security against the defendant’s need for more information, and held that the security interests were greater. Id.
The Ridley court acknowledged that “the government may still have other interests, implicated by [the informer] privilege, which extend beyond withholding the identity of the informant,” thus recognizing “other valid reasons” for nondisclosure. Ridley, 814 F.Sup. at 997. Id. at 997-98. The Ridley Cl had arranged the transaction and accompanied the FBI agent when purchasing a machine gun. Id. at 994. The government raised concerns for the Cl’s safety and their need to have functioning Cl’s in this closed criminal community involving the illicit sale of automatic weapons. Id. at 998. The defendant asserted that he already knew the Cl’s identity, and needed additional information to “offer some basis for asserting an entrapment defense.” Id. at 995. In balancing, the court found the governmental need to be greater, particularly given the fact that the gun transaction was audiotaped. Id. at 997-98.
*316 The Abellaneda-Leon case involved a drug arrest and a Cl who allegedly induced the defendant to deliver drugs. 12 F.3d 1108, 1993 WL 503210 at *2 (9th Cir. 1993) (unpublished opinion). The government disclosed the Cl’s name, birth date, prior arrest record (none), cases of prior testimony (none), money received on this deal of $500, and money on deals in the prior six years totaling $120,000; the defendant found the Cl’s address. Id. at *1. The record is unclear as to exactly what other case information the defendant sought in his effort to impeach the CL The government raised concerns for the Cl’s safety. Id. Applying a Rouioro-like balancing test based on its application in Cutler, the court found that further information would have been “either cumulative or only marginally relevant.” Abellaneda-Leon, 12 F.3d at *1. Further, from a post-conviction perspective, the court indicated that because the Cl testified, the “jury received sufficient information to appraise the biases and motivations of the informant.” Id The court held that though the defendant was denied access to further Cl information, there was no abuse of discretion by the lower court. Id
D. Case at Bar
Applying the Roviaro factors to the case at bar, the defendant is charged with trafficking significant quantities of cocaine, on several occasions, in high crime drug areas. The Cl’s testimony will be important to the prosecution, but not solitary due to the full participation of the undercover police officers. The defendant is considering raising the entrapment defense, particularly based on findings relative to the Cl in the Sidhom opinion, though the defendant did not submit an affidavit to support this defense.
In seeking this supplemental discovery, the defendant argues this information is necessary for him to mount an effective defense and to receive a fair trial. The government argues that it must protect the Cl’s safety, and that these safety concerns outweigh the minimal value of the supplemental information. The government also argues that the request is overbroad, and that the defendant has stated no specific need that cannot be satisfied with the current body of impeachment material.
The Court agrees that the request is overbroad. The Court proceeds on the premise that it is considering cases brought by the District Attorneys or the Attorney General of Massachusetts, only, and not federal cases. Due to the breadth of the information sought, cases are addressed in applicable segments.
1.Cases Where Other Defendants Have Not Pierced Privilege
The Roviaro privilege enables a defendant to proffer sufficient justification to warrant revealing the Cl’s identity. The test is directed at the Cl in the then case at bar, not CIs in other cases. The point in Roviaro is to balance the government interests against the immediate defendant’s interest in a fair trial, but not the interests of subsequent defendants. Relative to the case at bar, should any cases exist where the this Cl’s identity remained unknown, the then immediate defendant was obviously unable to provide sufficient reason to justify piercing the privilege. The Court finds no support in the law that Saletino can now justify piercing the privilege, when the original defendant could not. Government interests in the undisclosed cases far outweigh the defendant’s needs. The Court denies the motion relative to information on other cases where the Cl’s identity was never revealed.
2.Cases Filed After July 1, 1995
It has been over nine years since the drug transaction in this case took place. The defendant was in default for more than seven years after his arrest on August6,1993. The defendant should have been requesting this discovery long ago. The defendant cannot benefit from his extended period in default. See Commonwealth v. Stuyvestant Ins. Co., 366 Mass. 611, 621 (1975). Providing information on the Cl’s involvement with the government beyond the time within which the defendant should have been tried would be inappropriate, and would reward him for his default. Further, at the time of the defendant’s arrest in 1993, the Cl obviously had no knowledge as to cases that did not yet exist, making the existence and circumstances of those cases irrelevant to the case at bar. The motion is denied relative to any case filed after July 1, 1995.
3.Cases Filed Before July 1, 1995, Where Cl’s Identity Was Revealed to Relevant Defendant
In limiting the cases to be considered, the Court applies the Roviaro balancing test to a now more narrow set of considerations. In this sub-set of cases, the relevant defendants proffered sufficient justification to require the Commonwealth to produce information concerning these particular cases where the Cl in question has previously been disclosed. Thus, no government privilege would be violated in revealing the Cl’s identity here. However, one defendant’s ability to surmount the Roviaro test and learn the identity of the Cl in his or her own case, does not translate to the information necessarily being public. A government interest still exits, albeit a smaller one, in the safety risk present in releasing the information yet again. Revival of now long-complete investigations could serve to increase safely risks for the Cl relative to other past defendants now long forgotten, and possibly some present investigations or investigatory techniques.
These government risks are balanced against the incremental gains for the defendant, to be had from supplemental and perhaps cumulative evidence relative the Cl’s bias. The defendant is facing a minimum fifteen year sentence. Should he ultimately raise the entrapment defense and attempt to impeach the Cl on cross-examination, he will have a substantial body of information with which to confront the Cl, including at least eight investigations counting this one. The jury will have a broad array of information with which to judge allegations of inducement, as well as the bias *317 and motivation of the CL Arguably though, with access to additional cases, the defendant will have a larger pool from which to select, and could then focus on those cases that best support his arguments.
The cumulative nature of the sought after information is ultimately the salient issue here, given that both sides have valid and what this Court views as similarly weighted interests. If the Court finds the evidence is cumulative and denies access, it will be usurping a traditional trial court decision regarding the admission of evidence, one not typically made during discovery. On the other hand, if the information is released and the cumulative question is left for the trial court, protection of the government’s interests will be a moot point, as the damage will conceivably already be done when the case list is released. There is no valid “wait and see at trial” approach when considering protection of the government’s interests.
While the Court views this question as being a close call at this discovery stage under a Rule 14 analysis, the Court finds that the defendant’s interests outweigh those of the government relative to this limited sub-set of cases.[7] In an effort to minimize the potential risks to the Cl and the police, the form of the case information should include: case date, circumstances of the charge, description of the Cl’s involvement, and results of the case. The Court also requires that the information only be shared with the defendant, and his legal and investigatory team. The parties are to draft a proposed protective order and submit it to this Court for approval. The specific case name and docket number need not be included. In continuing to balance the interests here, the protective order will further minimize the risk to the government and the Cl, maintain this defendants interest in the information, and appropriately leave issues of potentially cumulative evidence to the trial judge.
ORDER
For the foregoing reasons, it is hereby ORDERED that the defendant’s motion for further evidence regarding the confidential informant be DENIED in part and ALLOWED in part. The government is ORDERED to release information regarding cases in which the Cl participated in the investigation, providing a resulting case was filed prior to July 1, 1995, and the Cl’s name was previously revealed to the relevant defendant.[8]

For a pre-Stage One Bishop analysis, the defendant must initially make a showing that file requested material is “likely to be relevant.” Oliveira, 438 Mass. at 339. If the relevancy standard is satisfied, the holder of the privilege may then assert a privilege or otherwise object. Id. at 340. See also Commonwealth v. Pelosi, 55 Mass.App.Ct. 390, 398 n.12 (2002); Commonwealth v. Spinney, No. 0077CR0983-85 (Agnes, J., Mass. Super. April 17, 2001) (13 Mass. L. Rptr. 49), and Commonwealth v. Bougas, 11 Mass. L. Rptr. 676, 2000 WL 576398 (Gants, J., Mass. Super. April 24, 2000) (articulating the distinctions between Stage One and Stage Two in the Bishop analysis).

“[A]n affidavit detailing all facts relied upon in support of the motion and signed by a person with personal knowledge of the factual basis of the motion shall be attached.” Rule 13(a)(2).

The majority of cases examining this issue have done so from a post-conviction perspective. In those appellate cases, the Brady standard is employed to assess prosecutorial nondisclosure of exculpatory evidence. Commonwealth v. Tucceri, 412 Mass. 401, 405-06 (1992) (citing Brady v. Maryland, 373 U.S. 83 (1963)). This standard requires that a new trial be ordered if there is a reasonable probability that the non-disclosed evidence would have, if disclosed, produced a different trial result. Id. This standard is more stringent than the pretrial discovery standard applicable here. Considering this difference, the cases cited which employed the stricter standard must be carefully construed.

Cutler and Abellaneda-Leon applied the Roviaro balancing test in a post-conviction appeal. In contrast, Ridley is the only case identified that applied the Roviaro test in a pre-trial appeal. United States v. Cutler, 806 F.2d 933, 935 (9th Cir. 1986); United States v. Ridley, 814 F.Sup. 992, 997 (D.Kan. 1993); United States v. Abellaneda-Leon, 12 F.3d 1108, 1993 WL 503210 at *1 (9th Cir. 1993) (unpublished opinion).

Interestingly, none of these cases raise or even consider whether some of the requested information remains privileged within other cases.

The Cutler defendant, a member of a white supremacist group, contracted with an undercover FBI agent for the murder of several people. The Cl, in his role as government informant, had introduced Cutler to the FBI agent. Cutler, 806 F.2d at 935.

The holdings in several other cases considering this issue support the finding here, though they did not form the doctrinal framework of this opinion because they were decided under the higher Brady standard for disclosure of exculpatory evidence. Most often, the cases have found supplemental evidence regarding the Cl to be cumulative, particularly when the jury has ample opportunity to assess bias and motivation. United States v. Garcia, 917 F.2d 1370, 1375 (5th Cir. 1990) (indicating defendant’s being given Cl’s name, payment and the fact of other involvement, and no more, was sufficient, given that there was adequate ability to prepare the case, and the information went only to weight and reliability of testimony); United States v. Abonce-Barrera, 257 F.3d 959, 969-70 (9th Cir. 2000) (defense provided no support for releasing a list of all other cases, beyond a “fishing expedition”); United States v. Molinaro, 683 F.Sup. 205, 210 (E.D.Wis. 1988) (defendant was informed of current case specifics and a schedule of payments on prior cases, but no more; additional information would only be revealed based on particularized need). Compare Jiminez v. State, 918 P.2d 687 (1996) (disclosure of no information beyond Cl name was due process violation).
Other courts have reached comparable findings when entrapment was considered. United States v. Sharp, 778 F.2d 1182, 1186 (6th Cir. 1985) (determining that Roviaro privilege protects information beyond Cl name, thus denying further information based on conjecture to support entrapment); Minnesota v. Weigand, No. C5-91-2208, 1992 WL 189343, at *3 (Minn.App. 1992) (denying release of payment information to show entrapment without defendant statement of actual pressure from CI); Minnesota v. Solheim, 477 N.W.2d 785, 788 (Minn.App. 1991) (Cl financial incentive insufficient to require revelation of other information, without proof of pressure).

This Court recognizes that the cataloging of cases over this span of time may prove to be difficult. To the extent that any information is unavailable due to the passage of time, fault lies not with the Commonwealth but with the defendant.