**UNITED STATES of America ex rel. John CRAWLEY**

**v.**

**Alfred T. RUNDLE, Supt.**

**Misc. No. 69–250.**

United States District Court, E. D. Pennsylvania.

Oct. 28, 1969.

John Crawley, in pro. per.

Arlen Specter, Dist. Atty. of Philadelphia County, for defendant.

### MEMORANDUM AND ORDER

BODY, District Judge.

This case involves a petition for writ of habeas corpus wherein relator alleges that he was denied due process of law, first by the failure of the Commonwealth of Pennsylvania to identify or produce at trial a police informant who supplied information for a search warrant, and second, by the refusal of the state trial court to suppress evidence obtained by means of an allegedly illegal search warrant. The facts are as follows.

A taproom located at 2501 North Sixth Street in Philadelphia was burglarized on August 29, 1965. On the basis of information furnished by a neighborhood resident, the police obtained a search warrant for relator's residence a few hours after the burglary. A search of the premises revealed property subsequently identified as that stolen from the taproom. Relator was then arrested and later convicted of the crime in the Court of Quarter Sessions of Philadelphia County. He was sentenced to from four (4) to ten (10) years imprisonment.

On direct appeal relator urged the same two contentions which are presently before this Court. The Superior Court affirmed the trial court judgment in Commonwealth v. Crawley, 209 Pa.Super. 70, 223 A.2d 885 (1966), and the Supreme Court granted allocatur. It also affirmed in Commonwealth v. Crawley, 432 Pa. 627, 247 A.2d 226 (1968).

 Relator's first argument is that he was denied due process of law by the trial court's refusal to order the prosecution to divulge the identity and location of a police informant. The informant was the sole known eyewitness to the crime, and it is contended that her testimony was essential to a fair determination of relator's guilt or innocence.

In Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), the Supreme Court had the following to say concerning the Government's privilege to withhold from disclosure the identity of persons who furnish information about criminal conduct to law-enforcement officers.[1]

---

1. Although *Roviaro* involved an interpretation of federal statutory standards and would not therefore be technically binding on this Court in the present action, both relator and respondent rely on it and its offspring as controlling our decision on this point.

"The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement. The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation." [353 U.S. at 59, 77 S.Ct. at 627]

The court in that case went on to say:

"A further limitation on the applicability of the privilege arises from the fundamental requirements of fairness. Where the disclosure of an informer's identity * * * is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." [353 U.S. at 60–61, 77 S.Ct. at 628 (footnotes omitted)]

It concluded:

"We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." [353 U.S. at 62, 77 S.Ct. at 628–629]

Considering the privilege, its limitations, and the public policies supporting each, this Court is of the opinion that disclosure of the informant's identity was not required in order to ensure a fair determination of the cause. Burglary is not the kind of crime which ordinarily involves a "transaction", and none is alleged to have occurred here. This fact distinguishes the present case from Roviaro v. United States, supra, and renders it more like McCray v. Illinois, 386 U.S. 300, 87 S.Ct. 1056, 18 L. Ed.2d 62 (1967), and Rugendorf v. United States, 376 U.S. 528, 84 S.Ct. 825, 11 L.Ed.2d 887 (1964), which involved convictions on the basis of unlawful possession. Testimony of participants in or eyewitnesses to a "transaction" is normally required to prove its occurrence, since after its consummation such is noncontinuing by definition. On the other hand, possession, once gained, often continues for a period of time and makes possible its proof by the testimony of someone who witnessed it sometime after it came into being. So here, where the crime charged may be proven by the inferences arising from the possession of recently stolen property (Commonwealth v. Newman, 276 Pa. 534, 120 A. 474 (1923); Commonwealth v. Salkey, 185 Pa.Super. 148, 137 A.2d 924 (1958); Commonwealth v. Williams, 179 Pa.Super. 496, 118 A.2d 228 (1955)), the testimony of an eyewitness to the acquisition of possession is not crucial to a fair determination of the defendant's guilt so long as other persons who witnessed the uninterrupted possession at a later time are available. Since both the arresting officer and the owner of the stolen goods saw the goods in defendant's possession, the absence of the eyewitness informant's testimony and the failure to disclose her identity were not prejudicial under the above rule.

In further support of this conclusion it can be observed that the failure to produce the informant at trial and to disclose her identity in no way prejudiced any of the defenses defendant attempted to make out. Moreover, there was no issue of entrapment or identity concerning which the informant's testimony might have had special significance. For these reasons defendant's first argument is considered unsound.

We now pass to relator's second point, which is that the state courts erred in refusing to suppress evidence obtained by means of an allegedly illegal

search warrant.[2] Relator's claim of illegality stems from the fact that the affiant never spoke to or had any dealings with the police informant, but instead received his information from two unnamed police officers who in turn received their information from the informant.

Although the search warrant itself appears not to have been made a part of the record at trial, its contents as recorded in the notes of testimony (p. 47) are as follows:

> "'Acting on reliable information received by * * *' that would be Officer Shirley * * * do believe that the above described person, one colored man, approximately five foot eleven, medium thin build is responsible for a burglary at 2501 North 6th Street and that the above described whiskey and monies that were taken are to be found in his residence. Address is 2502 North 6th Street, three story row brick house. Property seized, assorted whiskey, ⅘ bottles, approximately $100 in cash."

At trial, relator's counsel also questioned the affiant as to what facts not contained in the warrant were related to the magistrate orally. Detective Shirley replied (N.T. 43–44):

> "That an informant approached the two officers who had taken a report of the burglary, told them that she had witnessed the burglary and wanted to remain anonymous because of her position in the neighborhood, and that this fellow was a colored man about five foot eleven, thin built, and that he took the items that he pushed out of a cellar door to 2502 North 6th Street and entered these premises."

■ It is well settled that an affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant. Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960); Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L. Ed.2d 637 (1969). Consequently, if the two unnamed policemen had acted as the affiants, there would have been no question of the validity of the method by which evidence of probable cause was presented. The question then becomes whether the fact that they related this information to Detective Shirley, who in turn applied for the warrant, alters the result. We think not. It would be overly burdensome to impose the requirement that the same law enforcement official who received information from an informant must apply for any search warrant sought. Unnecessary administrative problems would result. Moreover, this is especially true where, as here, there are no facts which suggest that the informant's credibility is indicated solely by the relationship existing between the informant and the person to whom he communicated his information. In contrast, here the circumstances surrounding the giving of the information impart credibility. Further, where there is no allegation of bad faith on the part of the law enforcement officials involved, there is no reason to discredit information passed from one official to another before being offered to a magistrate as grounds for probable cause. Accordingly, we reject relator's second argument and hold that the search warrant was valid. It follows that the evidence in question was properly admitted at trial.

### ORDER

And now, this twenty-eighth day of October, 1969, it is ordered that relator's petition for writ of habeas corpus be and the same is hereby denied.

There is probable cause for appeal.

---

2. Relator waited until his trial to object to the admissibility of the evidence in question. Consequently, no separate pre-trial hearing was held on the motion to suppress. However, since the trial judge in his discretion entertained the motion at trial, we shall likewise pass upon his ruling on the merits.