## Commonwealth vs. David Oliveira.

Bristol. February 4, 2002. - December 26, 2002.

Present: Marshall, C.J., Greaney, Ireland, Spina, Cowin, Sosman, & Cordy, JJ.

*Child Abuse. Rape. Indecent Assault and Battery. Evidence,* Privileged communication, Communication between patient and psychotherapist, Communication with social worker, Relevancy and materiality. *Privileged Communication.*

This court vacated a Superior Court judge's order denying a criminal defendant access to certain treatment records of a complaining witness in the defendant's prosecution on multiple indictments charging a series of sexual assaults where, absent an affirmative assertion of any privilege established by G. L. c. 233, § 20B, or G. L. c. 112, § 135B, the judge should not have subjected the treatment records to procedures that were applicable only to privileged records [330-337], and where, upon the defendant's request that he be allowed to investigate the consequences of his former counsel's failure to request the records, the unprivileged records should not have been withheld or released based solely on the judge's in camera review and assessment of their relevance [337-342]. Greaney, J., concurring, with whom Marshall, C.J., and Spina, J., joined.

Indictments found and returned in the Superior Court Department on February 24, 1994.

Following review by this court, 431 Mass. 609 (2000), further proceedings were had before *James F. McHugh, III*, J.

The Supreme Judicial Court granted an application for direct appellate review.

*Peter M. Onek*, Committee for Public Counsel Services, for the defendant.

*Paula Finley Mangum*, Assistant District Attorney, for the Commonwealth.

Sosman, J. The defendant appeals from an order denying him access to certain treatment records of one of the complaining witnesses, contending that the judge's rulings failed to comport with this court's order remanding the case for further proceedings with respect to those records. *Commonwealth* v. *Oliveira,*

431 Mass. 609 (2000). We granted the defendant's application for direct appellate review, and we now vacate the order and remand the case for further proceedings.

1. *Background.* The defendant was convicted on multiple indictments stemming from a series of sexual assaults perpetrated against his girl friend's two daughters, Kerri and Kathy Ann.[1] The victims had lived in the same household with the defendant and their mother throughout the time period of the alleged abuse. Kerri, who was fifteen years old at the time of trial, alleged that the defendant had assaulted her from the time she was seven or eight years old until she was thirteen years old. Kathy Ann, eighteen years old by the time of trial, alleged that the defendant's sexual assaults began when she was nine years of age and continued until she was fifteen years old. When she was ten years old, Kathy Ann had disclosed the abuse to her mother, but then retracted the allegation at the defendant's insistence. Several years later, she again complained to her mother about the defendant's abuse, at which point the defendant made some incriminating admissions to the mother and promised to seek counselling. Notwithstanding that promise, Kathy Ann reported some months later that the abuse was still continuing. The family finally reported the allegations to the police in July, 1993, a month after Kathy Ann attempted suicide.

Indictments were returned on February 24, 1994. Prior to trial, counsel reviewed certain Department of Social Services (department) records and treatment records from the Family Care Center. The treatment records were obtained by way of the procedures set forth in *Commonwealth* v. *Bishop*, 416 Mass. 169, 181-182 (1993) (*Bishop*). As to the department's records, Kathy Ann had signed her own release authorizing their disclosure, and the mother had signed a similar release on behalf of Kerri. The records reviewed by trial counsel contained references to other treatment providers who had rendered services to Kathy Ann during potentially relevant time periods (e.g., records pertaining to Kathy Ann's suicide attempt immediately prior to the family's decision to report her allegations to the police). Notwithstanding the potential relevance of those other

---

[1]We use the same pseudonyms for the victims used in the court's earlier opinion. *Commonwealth* v. *Oliveira*, 431 Mass. 609, 610 (2000).

records, and notwithstanding counsel's apparent awareness of their existence, he made no effort to obtain access to any of those records. The defendant was tried and convicted in October, 1995.

While the defendant's direct appeal was pending, he moved for a new trial, claiming ineffective assistance of counsel for counsel's failure to seek production of those additional treatment records. On appeal from the denial of that motion, this court agreed that counsel's failure to seek such records, which met at least the "likely to be relevant" standard of *Bishop*, was not the product of any reasoned "tactical" decision. *Commonwealth* v. *Oliveira, supra* at 614-615. However, without knowing the contents of those records, the issue of alleged prejudice resulting from counsel's failure could not be resolved. *Id.* at 615-616. Proceeding from the "assumption that the records requested were privileged," *id.* at 616, the matter was remanded for the judge's examination of the records and his determination whether they contained any relevant material. If not, the motion for a new trial was to be denied, as counsel's failure would not have resulted in any prejudice; if they did contain relevant material, defense counsel was to be given access to the records so that he could pursue a further motion for a new trial "indicating how the material in the records would have been useful to the defendant." *Id.* at 615-616.

On remand, however, the underlying assumption regarding the privileged nature of the records turned out to be incorrect. The defendant requested that the remand proceedings begin with the judge's determination whether the records were in fact privileged. The defendant argued that he should be given access to any unprivileged records, and to any records for which no privilege was asserted, without further assessment of relevance. The judge disagreed. Relying on the underlying requirement that discovery under Mass. R. Crim. P. 14, 378 Mass. 874 (1978), is limited to materials that are "relevant," the judge was of the view that where his in camera inspection of a record revealed that that record was not "relevant," he could deny the defendant access to even an unprivileged record. He also held that, in the absence of any assertion of privilege, he could make the determination that a particular privilege applied to the rec-

ords and treat them as privileged (thereby subjecting the records to the remaining stages of *Bishop*).

Three sets of records were summonsed to the clerk's office: (1) records from Charlton Memorial Hospital pertaining to three inpatient admissions of Kathy Ann; (2) records from Corrigan Mental Health Center, pertaining to two assessments of Kathy Ann and one admission; and (3) records from the Center for Health & Human Services, Inc., pertaining to some eighteen months of consultations and sessions with Kathy Ann and other members of her family. Neither Kathy Ann nor any member of her family asserted any privilege with respect to any of the summonsed records,[2] and none of the health care providers asserted any privilege on her or their behalf. Notwithstanding the absence of any assertion of any privilege, the judge inspected the entirety of the records in camera. His determinations with respect to the specific records at issue were as follows.[3]

As to the hospital records, the judge determined that the records were not privileged. He concluded that the records pertaining to Kathy Ann's hospital admission in June, 1993 (the date of her suicide attempt and immediately prior to the report to the police), were "marginally" relevant, but that the other two admissions (in January, 1994, and December, 1994) were for "physical conditions wholly unrelated to any issue [in] this case" and the records of those admissions were therefore "entirely irrelevant." Based on those determinations, the judge allowed counsel to review the records from the "marginally" relevant June, 1993, admission, but denied access to the records pertaining to the other two "irrelevant" hospital admissions.

As to the records from Corrigan Mental Health Center, the judge determined that they were protected by either the psychotherapist-patient privilege (G. L. c. 233, § 20B) or the social worker-client privilege (G. L. c. 112, § 135B), or both of

[2]There is nothing in the record to indicate whether Kathy Ann or anyone in her family was notified of the issuance of these summonses.

[3]The judge's initial memorandum and order on remand was entered on December 15, 2000, and later amended by an order on motion for clarification on February 1, 2001. We summarize the judge's amended findings and conclusions.

those privileges.[4] He concluded that the records of a June 16, 1993, assessment were "relevant,"[5] but that the remainder of the records from Corrigan Mental Health Center (pertaining to an assessment performed on April 22, 1994, and an admission on June 3, 1994) were not. He allowed the defendant access only to the record of the June, 1993, assessment.

Finally, with respect to the records of the Center for Health & Human Services, the judge again concluded that those records were protected by either the psychotherapist-patient privilege (G. L. c. 233, § 20B) or the social worker-client privilege (G. L. c. 112, § 135B), or both of those privileges.[6] The records, pertaining to multiple sessions involving Kathy Ann and other family members, covered the time period from the fall of 1993 to the spring of 1995. The judge determined that "[n]one [of the records] contains any detailed description of the complaining witness's interaction with the defendant in this case or other information that is relevant to this case." Pursuant to that relevancy determination, the judge denied the defendant access to the entirety of the Center for Health & Human Services, Inc., records.

---

[4]The judge had originally ruled that the records were covered by the sexual assault counsellor-victim privilege (G. L. c. 233, § 20J), but later corrected that ruling, concluding that that privilege was not applicable. With respect to the two statutory privileges that the judge did find applicable, he did so "based on inferences" stemming from the presence of "professional initials" after signatures placed on the various assessments and evaluations, and on the fact that "[t]he content of the records are, in each case, consistent with what one would generally expect a psychiatrist, psychologist or social worker to seek and obtain in the course of a mental-health consultation." The defendant does not contest the propriety of those inferences. But see *Commonwealth* v. *Rosenberg*, 410 Mass. 347, 353-354 (1991); *Commonwealth* v. *Mandeville*, 386 Mass. 393, 408-409 (1982); *Commonwealth* v. *Clemons*, 12 Mass. App. Ct. 580, 585-586 (1981).

[5]Again, the date of that assessment corresponds to the time period of Kathy Ann's suicide attempt, which itself corresponds to the time period of the last of her disclosures and the family's decision to report her allegations to the police.

[6]As with the records from Corrigan Mental Health Center, the judge had originally ruled that the records from the Center for Health & Human Services, Inc., were covered by the sexual assault counsellor-victim privilege (G. L. c. 233, § 20J), but later concluded that that privilege was not applicable. His conclusion as to the two privileges that he found applicable was again based on "inferences," and that conclusion is not challenged on appeal. See note 4, *supra.*

2. *Discussion.* a. *Assertion of a privilege.* The defendant contends that the statutory privileges on which the judge relied are not self-executing and that, absent an affirmative assertion of the privilege, the records should not be treated as privileged. "Testimonial privileges 'are exceptions to the general duty imposed on all people to testify' " and therefore "must be strictly construed." *Three Juveniles* v. *Commonwealth*, 390 Mass. 357, 359 (1983), quoting *Commonwealth* v. *Corsetti*, 387 Mass. 1, 5 (1982). See *Commonwealth* v. *Mandeville*, 386 Mass. 393, 408-409 (1982) (communication with staff psychologist who did not meet licensure and educational requirements for "psychotherapist" under G. L. c. 233, § 20B, was not privileged communication under that section; court declined "to extend the patient-psychotherapist privilege beyond the bounds established by the Legislature"). The privileges at issue here are both created by statute; we therefore look to the wording of those statutes to determine what steps, if any, are required to trigger the applicability of those privileges.

The psychotherapist-patient privilege created by G. L. c. 233, § 20B, provides that "in any court proceeding . . . a patient shall have the privilege of refusing to disclose, and of preventing a witness from disclosing, any communication, wherever made, between said patient and a psychotherapist relative to the diagnosis or treatment of the patient's mental or emotional condition." Thus, in the operative language defining the privilege, the patient may "refus[e]" to disclose or "prevent[]" a witness from disclosing the communications in question. G. L. c. 233, § 20B. Both of those verbs connote action by the patient to stop the disclosure. That connotation is reinforced by other provisions of the same section. The statute provides that "[i]f a patient is incompetent to *exercise or waive* such privilege, a guardian shall be appointed to act in his behalf . . ." (emphasis added). *Id.* It further provides that "*[u]pon the exercise* of the privilege granted by this section, the judge or presiding officer shall instruct the jury that no adverse inference may be drawn therefrom" (emphasis added). *Id.*

The social worker-client privilege is worded in essentially identical terms. "[I]n any court proceeding . . . a client shall have the privilege of *refusing* to disclose and of *preventing* a

witness from disclosing, any communication, wherever made, between said client and a social worker . . . relative to the diagnosis or treatment of the client's mental or emotional condition" (emphasis added). G. L. c. 112, § 135B. As with the psychotherapist-patient privilege, "[i]f a client is incompetent to *exercise or waive* such privilege, a guardian shall be appointed to act in the client's behalf," and "[u]pon the *exercise of the privilege* granted by this section, the judge or presiding officer shall instruct the jury that no adverse inference may be drawn therefrom" (emphasis added). *Id.*

Thus, as described in the statutes creating these privileges, some action by the patient or client is necessary to "exercise" the privilege therein created. The privilege is not self-executing.[7] "The patient must therefore affirmatively exercise the [G. L. c. 233, § 20B,] privilege in order to prevent the psychotherapist from disclosing confidential communications at trial." P. J. Liacos, M.S. Brodin & M. Avery, Massachusetts Evidence § 13.5.2, at 796 (7th ed. 1999). See *Adoption of Carla*, 416 Mass. 510, 515 (1993) ("Since the existence of the privilege alone does not disqualify a psychotherapist from testifying, a party desiring to exercise the privilege must make an attempt to do so at trial"); *Commonwealth* v. *Benoit*, 410 Mass. 506, 518 (1991) (§ 20B does not "disqualify a psychotherapist from testifying" where defendant "failed to make any attempt to exercise the statutory privilege at trial"); *Adoption of Diane*, 400 Mass. 196, 201-202 (1987) (mother contesting petition to dispense with her consent to adoption could not invoke G. L. c. 233, § 20B, to object to psychiatrist's testimony where "neither the child's attorney nor the guardian ad litem chose to exercise the privilege"); *Petitions of the Dep't of Social Servs. to Dispense with Consent to*

---

[7]The Legislature can, of course, create a privilege that is automatic and that does not require any action on the part of the holder of the privilege. For example, the sexual assault counsellor-victim privilege created by G. L. c. 233, § 20J, prevents such a counsellor from disclosing communications "without the prior written consent of the victim." Thus, absent an affirmative written waiver from the victim, communications covered by that section are privileged. Section 20J does not suggest that the victim need do anything to "exercise" the privilege contained therein, or to "refuse" to disclose the communications, or to "prevent" the counsellor from disclosing the communications. The wording of § 20J illustrates that the Legislature can create a self-executing privilege when it intends to do so.

*Adoption*, 399 Mass. 279, 290 n.21 (1987) ("Because the [§ 20B] privilege belongs to the patient, it appears that the burden should be on the patient to assert the privilege"); *Commonwealth* v. *Souther*, 31 Mass. App. Ct. 219, 223 (1991) (§ 20B privilege "is to be *exercised* by the refusal of the patient to disclose or by the patient's *preventing* a witness from disclosing the communication with the therapist" [emphasis in original]; "the patient, who is the holder of the privilege, must take some affirmative step [most often, one supposes, through counsel] to keep the psychotherapist from giving evidence which discloses information developed in consultation and treatment"); *Adoption of Abigail*, 23 Mass. App. Ct. 191, 198 (1986) (§ 20B is privilege "which a patient may exercise"; where "[n]o effort was made to do so," no error in admitting psychologists' reports).[8]

Our jurisprudence concerning defendants' requests for access to such materials similarly refers to the need for some affirmative assertion of these statutory privileges. Under Stage I of *Bishop*, "[i]f the complainant or the keeper of the target records *refuses* to produce the records because of a statutory privilege against disclosure, the fact [of such refusal] is brought before the judge," and the judge then decides whether the records are privileged and issues a written decision "with specific reference to the privilege or privileges *claimed and found*, if any" (emphasis added). *Bishop, supra* at 181. See *Commonwealth* v. *Pare*, 427 Mass. 427, 429 & n.4 (1988) (describing *Bishop* Stage I as requiring judge to make determination of privilege where defendant seeks "access to records *claimed* to be privileged," noting that "alleged victim or the keeper of the target records may *refuse* to produce them *claiming* a statutory privilege or privileges against disclosure" [emphasis added]).

---

[8]Where the statutory privilege in question leaves it to the patient to affirmatively assert the privilege, even a provider's assertion of that privilege may be treated as only a temporary precaution pending confirmation of the patient's own intentions. See 8 J. Wigmore, Evidence § 2386 (McNaughton rev. 1961) (although physician witness may initially decline to answer on ground of patient's privilege, "still the claim of privilege must formally be made . . . by the patient, if he is before the court, or by his attorney; if he is not, then technically he should be given an opportunity to claim before the examination is proceeded with").

This requirement that the privilege be asserted cannot be dispensed with as a mere technicality. In the absence of any assertion of either of these privileges, a judge attempting to make a privilege determination solely from the records themselves would often have no information as to the professional status of the persons whose "communications" with the patient or client are reflected in the record. Here, it was precisely because of the absence of any assertion of privilege that the judge had to resort to "inferences" concerning the actual status of the professionals whose signatures and initials appeared in the records, leading him to conclude, based only on the substantive contents of the entries, that they were probably made by persons who qualified as either a "psychotherapist" within the meaning of G. L. c. 233, § 20B, or a "social worker" within the meaning of G. L. c. 112, § 35B. See note 4, *supra.* Although not directly challenged here, this approach illustrates the difficulty of determining the privileged nature of a record in the absence of any claim of privilege. For example, a notation in a record concerning a patient's mental or emotional condition may be made by a physician, psychologist, or nurse who does not meet the definition of "psychotherapist" set forth in G. L. c. 233, § 20B.[9] See *Commonwealth* v. *Rosenberg,* 410 Mass. 347, 353-354 (1991) (psychologist with doctoral degree in education but not in psychology was not "psychotherapist" within § 20B privilege; communications with psychologist and therapist lacking those credentials not privileged); *Commonwealth* v. *Mandeville,* 386 Mass. 393, 408-409 (1982) (communication with staff psychologist at community health center not privileged where psychologist did not have requisite license or degree required by § 20B);

[9]The term "psychotherapist" is defined as "a person licensed to practice medicine, who devotes a substantial portion of his time to the practice of psychiatry," and includes "a person who is licensed as a psychologist by the board of registration of psychologists; a graduate of, or student enrolled in, a doctoral degree program in psychology at a recognized educational institution [under G. L. c. 112, § 118,] who is working under the supervision of a licensed psychologist; or a person who is a registered nurse licensed by the board of registration in nursing whose certificate of registration has been endorsed authorizing the practice of professional nursing in an expanded role as a psychiatric nurse mental health clinical specialist, pursuant to [G. L. c. 112, § 80B]." G. L. c. 233, § 20B. From the mere subject matter of an entry in a record, one can glean little (if anything) as to whether the person with whom the patient communicated has the requisite credentials to satisfy this definition.

*Commonwealth* v. *Clemons*, 12 Mass. App. Ct. 580, 585-586 (1981) (no privilege where therapist lacked § 20B credentials). A patient asserting the § 20B privilege, however, can at least provide the information necessary for such a determination, e.g., that the doctor in question is in fact a psychiatrist. Thus, the affirmative assertion of such a privilege appears not only to be a requirement of the statute as worded, but is, as a practical matter, a necessary component to determining whether the factual predicate for the privilege exists.

We also reject the assumption that all complaining witnesses would necessarily wish to assert a privilege in these circumstances, so that the lack of a formal assertion of privilege may automatically be viewed as the product of mere inadvertence. While such records may contain personal information of an embarrassing nature, they do not necessarily do so, and one's perception of what is personal, private, or embarrassing is itself highly individualized. Some people view a particular subject matter as intensely private and would not disclose it absent extreme compulsion, while others openly discuss that same aspect of their personal history on nationally televised talk shows. With regard to the specific issue of a complaining witness's willingness to reveal privileged materials to the defendant, the potentially embarrassing information in those materials may be something that is already known to the defendant, and the witness may perceive no embarrassment in having the record revealed to someone who is already familiar with whatever embarrassing details are contained therein.[10] And, whatever the reluctance to divulge such records to a defendant might be, a complaining witness may also take into account the consequences of asserting a privilege — delay in the proceedings, and, where the issue is at all close, the uncertain outcome of any appeal concerning the court's decision to deny the defendant access to the records. For some complainants, although initially dismayed at the prospect of divulging a privileged record, they may ultimately prefer to disclose the

---

[10]This might well be the case where, as here, the defendant lived in the same household with the complaining witness. For example, while Kathy Ann would presumably be reluctant to divulge the history of her suicide attempt to persons outside her family or closest friends, the incident was not a secret to this defendant living in the household at the time.

record, and thereby obtain a prompt trial and final resolution of all related proceedings. Indeed, as illustrated by this case, Kathy Ann and her mother affirmatively waived privileges applicable to their department records. Thus, one cannot assume that all complainants will always prefer to assert all applicable privileges and thereby presume the assertion of the privilege. The actual assertion of the privilege is a requirement of the statute, not a meaningless formality or a foregone conclusion.

We also reject the judge's theory that the failure of any of the providers to assert a privilege on behalf of Kathy Ann must have been a breach of their duty to her so that he can, sua sponte, opt to remedy that ostensible breach by proceeding as if the privilege had been asserted. The record does not reflect whether any of the providers contacted Kathy Ann, or what (if anything) she communicated to them. Cf. *Commonwealth* v. *Kobrin*, 395 Mass. 284, 285, 287 & n.8 (1985) (upon receipt of summons for patient records, psychiatrist contacted patients "to determine whether they wished to assert their statutory privilege to prevent disclosure of communications"; patients provided psychiatrist with their written assertions of § 20B privilege). A provider's obligation to keep matters confidential may stem from a statute imposing such an obligation (oftentimes with a host of exceptions to that obligation), or may arise as a matter of professional ethics. See *Commonwealth* v. *Brandwein*, 435 Mass. 623, 628-630 (2002). However, as discussed above, the statutes at issue here recite as a predicate the *patient's* assertion of the privilege. They do not contain an absolute prohibition on disclosure. Cf. G. L. c. 233, § 20J (sexual assault counsellor "shall not disclose such confidential communication, without the prior written consent of the victim").[11] Health care providers that maintain records as to which the patient may assert a privilege have standing to assert that privilege on behalf of a

---

[11]The judge relied on our statement in *Commonwealth* v. *Fuller*, 423 Mass. 216, 220 n.3 (1996), that the rape crisis center in that case "has the obligation to assert the privilege provided by § 20J on behalf of its clients." As discussed above, (note 7, *supra*), however, G. L. c. 233, § 20J, is an example of a self-executing privilege, as the provider is prohibited from making any disclosure absent the client's "prior written consent." One cannot apply the statement about a rape crisis center's "obligation" in *Commonwealth* v. *Fuller*, *supra*, to statutory privileges that contain very different language.

patient who wishes to do so, see, e.g., *Commonwealth* v. *Kobrin, supra,* but that does not mean that all providers are "obligated" to assert all potential privileges in all circumstances. See *Adoption of Carla*, 416 Mass. 510, 515 (1993) (§ 20B privilege "does not disqualify a psychotherapist from testifying" where patient does not exercise the privilege); *Commonwealth* v. *Benoit*, 410 Mass. 506, 518 (1991) (same). One cannot, from a provider's mere production of records in response to a summons, assume that the provider's production of records was necessarily in violation of some "obligation" to the patient or client. Moreover, even if the provider has committed such a violation, the immediate remedy would be to stay the disclosure of the material until such time as the patient or client, the actual holder of the privilege, can be notified and given an opportunity to express his or her own wishes on the subject. See note 8, *supra.* The remedy would not be to proceed as if a proper privilege had been asserted.

We recognize that, in the context of a criminal proceeding, pragmatic difficulties face a witness wishing to prevent the disclosure of privileged records. The witness is not a "party" to the case; the district attorney does not represent the witness, and may have interests that conflict with the witness; the witness will often not have (and not be able to afford) counsel; and, of the utmost concern, the witness may not even receive timely notice that the records are being sought. Against that backdrop, it is difficult for a witness to make an informed, intelligent choice whether to assert a privilege, and difficult to exercise the privilege in a timely and proper manner if that is the witness's choice. Judges have devised various methods to enable witnesses to make an effective choice concerning the assertion of a privilege, by requiring notice to the witness, by appointing counsel or a guardian ad litem for the witness, or by recommending that the summonsed health care providers contact the patient, obtain the patient's waiver prior to production of records, or assert any applicable privileges on the patient's behalf. Steps that enhance a witness's ability to make an affirmative, informed choice between waiver or assertion of a privilege, or that protect potentially applicable privileges while waiting to hear directly from the witness, are permissible and appropriate.

It is not appropriate for the judge to effectively assert the privilege on the witness's behalf on the assumption that, if informed, the witness would assert the privilege. While well intentioned, such assumptions do not necessarily reflect the witness's actual preferences, and may indeed be contrary to the witness's wishes.[12]

Absent an affirmative assertion of the privileges established by G. L. c. 233, § 20B, and G. L. c. 112, § 135B, the court must treat such records as if they were unprivileged. Where no privilege was asserted by anyone here, the judge erred in subjecting those records to procedures that are applicable only to privileged records.[13]

b. *Relevance.* Where the records should not have been treated as privileged, we must address the judge's decision to withhold even unprivileged records based on his determination, after reviewing them in camera, that they were not "relevant." The judge took the position that he was to review all the records (including the hospital records that he found not privileged) and was not to release any of them to the defendant unless that review confirmed their "relevance." Thus, while he went through the exercise of determining the potential applicability of various privileges, the judge ultimately determined that their status as privileged or unprivileged had no bearing on whether the records would be released to the defendant. Rather, records were withheld or released based solely on the judge's assessment of their relevance. For the reasons discussed above, the absence of any assertion of the potentially applicable statutory privileges required the judge to treat those records as if they were unprivileged, and it is conceded that the hospital records

[12]Here, we have no way of knowing whether Kathy Ann would have preferred to reveal the privileged records, as she did with her department records, in order to hasten the resolution of this already overly protracted postconviction motion. Indeed, for all we know, Kathy Ann would be dismayed to learn that dispute over whether the defendant can see these records has, for years after the defendant's convictions, left the finality of those convictions in doubt.

[13]Recognizing that the failure to assert any privilege may well have been a function of Kathy Ann's ignorance that the records were even sought, we leave it to the judge on remand to decide what steps, if any, would be appropriate to inform Kathy Ann of these proceedings and give her an opportunity to assert any applicable privileges.

are not privileged. The issue, then, is whether records that are not privileged, or as to which no privilege has been asserted, can be withheld based on the judge's in camera review. For the following reasons, we conclude that they cannot.

We start this analysis recognizing the unique procedural posture of the inquiry now being made. Because these particular records were not sought prior to trial, they are now being sought for the narrow purpose of determining whether counsel's failure to obtain those records deprived the defendant of "an otherwise available, substantial ground of defence." *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974). In other words, present counsel is seeking to ascertain what would have happened if trial counsel had sought access to the records prior to the defendant's trial. As such, we must apply the law as it then existed,[14] and must allow counsel to investigate what difference a timely request for the records would have made to the defense. To conduct that investigation, present counsel must be allowed to see whatever prior counsel would have seen if the request for records had been made at that earlier juncture. As such, we should not skew the course of that investigation because of such factors as the judge's familiarity with the case from having presided at trial. Devoid of the convoluted procedural trappings that the case now carries, the question is whether records that have been summonsed into court would, in the absence of any claim of privilege, be turned over to defense counsel without any further review by the judge or any further consideration of their "relevance." Such records would, in the ordinary course, be turned over to defense counsel and, therefore, the records at issue here should also be turned over (assuming no privilege is asserted on remand, see note 13, *supra*).

---

[14]As we recognized in the defendant's earlier appeal, this meant that privileged records were to be judged against the "likely to be relevant" Stage II standard of *Commonwealth* v. *Bishop*, 416 Mass. 169, 181-182 (1993) (*Bishop*), not "the more stringent standards" for Stage II enunciated in *Commonwealth* v. *Fuller*, 423 Mass. 216, 226 (1996) (*Fuller*). *Commonwealth* v. *Oliveira*, 431 Mass. 609, 614-615 (2000). The law at the time the record request should have been made is the law by which this record review must be conducted, *id.*, and the parties have not asked us to consider any further modifications to the procedures mandated by *Bishop* and *Fuller*. But see *Commonwealth* v. *Sheehan*, 435 Mass. 183, 193-200 (2001) (Sosman, J., concurring).

The Commonwealth correctly points out that a defendant does not have an unlimited right to summons witnesses and documents in advance of trial, but may only do so after making a threshold showing of relevance. Pursuant to Mass. R. Crim. P. 14 (a) (2), 378 Mass. 874 (1978), a judge may, on the defendant's motion, "issue an order of discovery requiring that the defendant be permitted to discover, inspect and copy any *material and relevant* evidence [or] documents" (emphasis added).[15] The defendant does not dispute the requirement that he make that threshold showing, but correctly contends that he has already made it. This court has previously determined that the records in question are "likely to be relevant to the issue of Kathy Ann's credibility, particularly because they are likely to reveal evidence of the entire situation in the family of which the defendant had been a part." *Commonwealth* v. *Oliveira, supra* at 615. For that reason, a summons to each of the providers was issued commanding production of the records in question. Absent any assertion of privilege with respect to such documents, there would be no in camera review of the documents produced in response to the summons, no redaction of the documents based on a more fine-tuned assessment of their relevance, and no basis for essentially modifying the scope of the summons that was issued.

Nothing in rule 14 (a) (2) suggests that there is such a "second look" prior to production of documents. As often happens (and as happened here), the category of documents requested turns out to include some items that are relevant, but not every single item in that category contains relevant information. By definition, such requests for production of documents deal in likelihoods, i.e., a sufficient likelihood that the requested documents or objects will contain some information

---

[15]While Mass. R. Crim. P. 14 (a) (2), 378 Mass. 874 (1978), pertains to such evidence "within the possession, custody, or control of the prosecutor or persons under his direction and control," it is Mass. R. Crim. P. 17 (a) (2), 378 Mass. 885 (1978), that allows the defendant to summons "books, papers, documents, or other objects" from third parties. However, such a summons may not be used "to subvert the provisions of rule 14." Mass. R. Crim. P. 17 (a) (2). As such, the rule 14 (a) (2) requirement that the evidence sought must be "material and relevant" extends to discovery summonsed from third parties pursuant to rule 17 (a) (2).

that is material and relevant. And, where the summons to a third party must not be "unreasonable or oppressive," Mass. R. Crim. P. 17 (a) (2), 378 Mass. 885 (1978), the category of documents must be sufficiently well defined and not overly broad. No one, however, expects that there will be a perfect overlap between the category of documents described in the summons and the precise documents that are found to contain relevant information. As happened here, it is to be expected that some irrelevant material will be contained in the same category of documents that also yields relevant information. Absent someone interposing an objection to the summons (on grounds of privilege or otherwise), it is counsel, not a judge, that sifts through the material produced to separate the relevant "wheat" from the irrelevant "chaff."

It is only where a privilege is asserted and found to be applicable that the in camera review of *Bishop* occurs. See *Bishop*, *supra* at 184 ("If the judge rules that the undisclosed clinic records are not privileged, then the judge shall release the records to the parties"). See also *Commonwealth* v. *Neumyer*, 432 Mass. 23, 30 (2000) ("Once the determination is made that the records are not privileged, the *Bishop-Fuller* procedure is no longer applicable"). There is no reason to conduct an in camera *Bishop* review for "relevance" in the absence of any asserted privilege. Indeed, we have recognized that it is difficult for a judge to take on the role of an advocate and examine documents from one side's perspective, attempting to determine what use an advocate for that side might make from the information contained in those documents. See *Commonwealth* v. *Stockhammer*, 409 Mass. 867, 882 (1991). That the court has opted to accept the potential problems posed by a judge's in camera examination of records as a necessary compromise to protect privileges, see *Bishop*, *supra*, does not mean that we should accept them in the absence of some countervailing interest.

A conscientious and well-informed judge can still fail to grasp the significance of a particular item in a record, especially where its significance lies not in its own immediate relevance but rather in its indication of the existence of some other avenue of fruitful inquiry. And, as happened here, a judge's explanation as to why an item is ostensibly "irrelevant" can itself reveal

tantalizing possibilities of potential relevance. The judge's assessment that the records from one of the providers were not relevant was due to his determination that they did not contain "any *detailed* description of the complaining witness's interaction with the defendant" (emphasis added), suggesting that the records contained at least some general descriptions of those interactions, and leaving counsel only to wonder at the judge's distinction between a "detailed" as opposed to a merely general "description" of a subject matter that was itself of obvious relevance. Zealous advocates should not, in the absence of any privilege pertaining to the records, be required to settle for someone else's assessment of when relevant information has become sufficiently "detailed" to be of use to their clients.

We recognize that, in the context of a motion for a new trial, the defendant will ultimately have to show that the materials in the records were not only relevant but that they were of such significance that their absence deprived him of "a substantial ground of defence." *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974). Where, as here, the judge who presided at the defendant's trial is of the view that the withheld records do not even contain "relevant" information, it is tempting to leap to the conclusion that the records would be unavailing as to the ultimate merits of the defendant's motion for a new trial and that there is therefore no purpose in allowing the defendant's current counsel to see those records. However, the ultimate merits of that yet to be filed motion are not before us. What is before us is the defendant's request that he be allowed to investigate the consequences of his former counsel's failure to request these records. He should be allowed to complete the steps in that investigation, which, of necessity, include his review of whatever documents would, in the ordinary course, have been revealed to him if they had been sought at the proper time. Absent any assertion of privilege, the records would not have been subject to any in camera review and would have been seen by defense counsel. The fortuity that this judge *has* seen the records in camera (either because of his belief that he should do so even if unprivileged or in response to a remand order that assumed all the documents were privileged) should not alter that reconstruction of what would have happened if the

records had been timely sought. That reconstruction must take its full course so that the defendant's motion, whatever its chances of success, may be premised on an accurate and complete reconstruction, not an abbreviated or partial reconstruction, of what effective counsel would have seen.

3. *Conclusion.* The order denying the defendant access to the records of Charlton Memorial Hospital, Corrigan Mental Health Center, and the Center for Health & Human Services, Inc., is vacated, and the matter is remanded for further proceedings consistent with this opinion.

*So ordered.*

GREANEY, J. (concurring, with whom Marshall, C.J., and Spina, J., join). I agree with the result and most of the reasoning in the court's opinion. The precise issue is whether the records summonsed to court should be considered privileged in the absence of the assertion of a privilege or privileges. Our holding is that "as described in the statutes creating [the] privileges [under consideration], some action by the patient or client is necessary to 'exercise' the privilege therein created. The privilege is not self-executing." *Ante* at 331. This is as far as we have to (and should) go. I specifically reject the portions of the opinion which reach out in dicta to launch an attack on the *Bishop-Fuller* protocol. It is inappropriate to suggest in this case, without any foundation whatsoever, that the court might be inclined to modify the protocol in any material way. See *Commonwealth* v. *Sheehan*, 435 Mass. 183, 191-192 (2001) (Greaney, J., concurring).