# P.W. *vs.* M.S.[1]

No. 06-P-307.

Middlesex. June 14, 2006. - November 28, 2006.

Present: CYPHER, DOERFER, & MILLS, JJ.

*Probate Court,* Guardian ad litem. *Divorce and Separation,* Discovery. *Evidence,* Medical record, Privileged record.

In a child custody and visitation case brought by a father, a probate judge improperly delegated to a guardian ad litem the task of examining the father's medical and psychiatric records in camera, in contravention of G. L. c. 233, § 20B, regarding privileges protecting against the disclosure of certain information [785-787]; further, this court remanded the case for the determination of any genuine issue as to visitation, and for a determination of the relevance of the subject records to the resolution thereof [783-785, 787].

COMPLAINT for divorce filed in the Middlesex Division of the Probate and Family Court Department on October 21, 2003.

A motion to inspect medical and health records was heard by *Dorothy M. Gibson,* J.

Leave to prosecute an interlocutory appeal was allowed in the Appeals Court by *Trainor,* J.

*Ronald A. Witmer* for the father.

*Margot Ames Clower* (*Karen Dean-Smith* with her) for the mother.

CYPHER, J. This interlocutory appeal requires us to determine whether a judge of the Probate and Family Court properly could allow a guardian ad litem (GAL) unrestricted access to some 2,000 pages of medical and mental health records of the plaintiff, P.W. (father).[2] The father objects to what he claims is

---

[1]At the request of the parties, we use the initials they selected.

[2]A single justice of this court granted the father's petition, pursuant to G. L. c. 231, § 118, first par., to pursue an interlocutory appeal. The single justice

the judge's "wholesale delegation [to the GAL] of [the judge's] statutory duty under . . . G. L. c. 233, § 20B, . . . to conduct an in camera review of the records and balance the competing interests at issue."

*Background.* The father and the defendant, M.S. (mother), have been involved in issues centering on custody and visitation since the father filed a complaint for divorce on October 21, 2003. The parties were married in 1985, and have three children whose ages at the time the father filed his complaint for divorce were thirteen, ten, and seven. The children reside with the mother in the marital home in Winchester, which the father vacated in December, 2003.

Both before and after filing his complaint for divorce, the father suffered from severe emotional difficulties; he attempted suicide in April, 2004. He has been hospitalized and treated on an outpatient basis, and has received psychological counselling during the course of this litigation. The mother's concerns about the impact of the father's psychiatric history on the children, as well as the father's reactions to those concerns, have been the steering current throughout this case.

The father's complaint for divorce alleged an irretrievable breakdown, G. L. c. 208, § 1B, and requested that appropriate custody orders be entered. The mother counterclaimed and sought custody of the children. Complaining that his time with the children was "strictly controlled" by the mother, who demanded to be present at all times, the father moved on December 15, 2004, for unsupervised visitation. He also moved to establish a custody and parenting plan that would eliminate the mother's alleged "interference" with his relationship with the children, and requested joint legal and shared physical custody.

The father moved for the appointment of a GAL to investigate and report to the court on (1) issues of care and custody of the children; (2) an appropriate parenting plan; and (3) his request to "spend unsupervised time" with the children. A probate judge ordered the appointment of a GAL on December 23, 2004.

ordered further proceedings in the trial court stayed pending disposition of this appeal.

The GAL moved, in March, 2005, for access to the father's medical and psychiatric records, indicating that the records had been the subject of a discovery dispute.[3] The GAL stated that "the medical issues are central to this investigation and until such records are produced, the GAL cannot make meaningful progress." She concluded, "Since the medical records are likely to be voluminous and the [father] has expressed a desire to maintain some measure of privacy, the GAL is willing to either abide by any Court Order limiting the scope of discovery or participate in the determination of which records are most relevant. It should be noted that initially this GAL will not be reviewing those records, but instead they will be reviewed by [her] organization's staff psychiatrist who is also willing to participate in any such determination."[4] At a closed hearing before a second probate judge on May 4, 2005, the father represented that he would withdraw all claims for custody and visitation in order to avoid an order to release his medical and psychiatric records. The judge allowed the GAL's motion for production of the father's records, but orally stayed the order to permit the parties to submit memoranda of law. In his memorandum, the father opposed the GAL's request, complaining that her review of the records could result in the mother and her counsel obtaining the records, an outcome that he believed "would be extremely damaging to the children as well as to him."

On May 9, 2005, the father withdrew all of his custody and visitation claims, that is, his motion to establish a custody and parenting plan and his motion for unsupervised visitation with the children; moved to amend his complaint for divorce by deleting his request for custody and visitation; and sought to revoke the appointment of the GAL, on the ground that "there

[3]The father had objected on February 15, 2005, to an interrogatory from the mother that asked whether he had received treatment "on an ongoing basis for any medical or psychiatric condition from 1988 to the present," and requested information on diagnoses, names of physicians, dates of treatment and hospitalizations, and diagnosis on admission. The father asserted that the interrogatory was overly broad and unduly burdensome, and that information protected by the patient-psychotherapist privilege was being requested.

[4]The GAL, Marcia M. Boumil, is the director of the comprehensive family evaluation center at the New England Medical Center.

is no longer any contested issue concerning the children." On May 18, 2005, the same judge allowed the father's motion to amend his complaint by withdrawing his request for "appropriate custody orders," but denied the motion to revoke appointment of the GAL.

On June 1, 2005, the GAL submitted a preliminary report, stating that further investigation had been impeded by the controversy over access to the father's psychiatric records. She concluded her report by stating that it was her "position that the children . . . clearly seek an increased and meaningful relationship with their father, and that it would be detrimental to the children if visitation were further decreased." She recommended that arrangements be made for their weekly visitation with the father "in any suitable setting supervised by an acceptable monitor other than their mother, or supervised by their mother if she is out of earshot of the visit."

On September 8, 2005, the first judge allowed the mother's motion for a temporary order for sole legal and physical custody of the children, noting that the "contact between the Father and children shall remain [s]tatus [q]uo."[5] At that time, the judge also denied the mother's request for a restraining order.

On October 4, 2005, the first judge ordered the father to produce "all medical and mental health records to the Court for an in camera review pursuant to [G. L. c. 233, § 20B], regarding [the father's] visitation with the minor children." Production of the records was required "on or before November 1, 2005." In a motion for clarification filed on October 31, together with a "Motion to Extend Time for the Production of Documents" to December 1, 2005, the father requested that the judge clarify her October 4 order "by identifying the time period for which [the father's] medical and mental health records are to be produced" and by "providing [the father] with advance notice of any documents to be released to the [GAL] or the [mother]." In support of the motion, the father stated:

---

[5]The record does not clearly show what was meant by "status quo." We are unable to determine from the record whether either of the probate judges ever explicitly approved a visitation schedule. It appears that visitation occurs only in public places, always in the mother's presence, and with the mother providing transportation.

"1. Without a specific time frame for the production of his records, [the father] will be unable to make certain that he is in compliance with the Court's Order unless he produces records for his entire lifetime. This not only would be an unintended but an unreasonable result of the Court's Order.

"2. Advance notice is reasonably required in order to preserve [the father's] appellate rights."

The motion to extend time was allowed on November 9, 2005, but the court did not respond to the father's motion for clarification.

On four days in December, 2005, the father submitted a total of 2,046 pages of records.[6,7] On January 11, 2006, the judge issued a further order stating that, "[p]ending a hearing on the merits and until further order of the court . . . [the GAL] shall be entitled to access and inspect the medical records of [the father] in the course of her investigation regarding visitation." The judge also ordered that "neither counsel [n]or the parties shall have independent access to [the] records," and that upon completion of the GAL's report, "either party may move that the court release records for the purpose of preparation for trial." The father appeals from that order.

*Discussion. 1. The nature of this interlocutory appeal.* The father asks that the judge's order of January 11, 2006, be vacated. He complains that the order allows complete disclosure of his medical records to the GAL, in violation of his various privileges, such as that of the patient-psychotherapist, G. L. c. 233, § 20B. As there is no indication that the judge's order

---

[6] The father indicates that the records are from three hospitals, two rehabilitation centers, and thirteen health providers. In addition, records of joint counselling were submitted, unopened by the father or his counsel.

[7] In the first letter of transmittal, the father's counsel stated a continuing objection to the release of the records and asserted that they were protected by enumerated privileges, including G. L. c. 233, § 20B. The letter noted that the judge had yet to rule on the father's motion for clarification and that, pending a decision on the motion, the father would produce records for the past ten years. Enclosed was a schedule entitled "Medical Records Requested," setting forth the providers to whom requests for records had been made. Neither the records nor the schedule have been submitted in this appeal.

has been carried out[8] and, therefore, no indication that the father has been harmed, we must consider whether it is appropriate to review that order. While the order does not appear clearly "final," and therefore appealable, we nevertheless think that review will avoid further interruption of the litigation and avoid waste of judicial effort. Compare *Borman* v. *Borman*, 378 Mass. 775, 779 (1979). For these reasons, we decide that review is appropriate, and we consider the father's challenge of the judge's order in the context of the central issue in this case, the father's visitation with the children.

The father argued below that there was no longer any triable issue of custody or visitation after he withdrew those claims, and that, therefore, no access to his records was necessary, and there was no longer a need for a GAL. On appeal, he has modified that argument, apparently acknowledging that he still wishes to retain visitation rights. For example, in his reply brief, the father argues that "[b]ecause the only relevant issue is [the mother's] allegation of dangerousness in connection with visitation rather than competing claims for legal or physical custody, fewer of [the father's] medical records would be relevant and material." See, e.g., *McMahon* v. *McMahon*, 1 Mass. App. Ct. 647, 650 (1973) (where father sought modification of visitation, but not custody, GAL investigator appointed pursuant to G. L. c. 215, § 56A; provisions of G. L. c. 233, § 20B[e], applicable).

We think that the case must be remanded to clarify the status of the father's visitation. If the father pursues visitation, it will be open to the judge to determine the limits, if any, to be placed on the father's visitation. *Rolde* v. *Rolde*, 12 Mass. App. Ct. 398, 406 (1981). At that time, "[d]iscretion allows the judge, when determining the best interests of children, to consider the widest range of permissible evidence, including the reports and testimony of a court appointed investigator or G.A.L., evidence of the history of the relationship between [each] child and each

---

[8]Neither the briefs of the parties nor the record on appeal provide any evidence whether the GAL conducted a review of the father's records after she was permitted to do so by the judge's order of January 11, 2006. The order of the single justice staying proceedings in the Probate and Family Court was entered in that court on March 17, 2006.

parent, evidence of each parent's present home environment and over-all fitness to further the child's best interests," as well as other factors. *Ardizoni* v. *Raymond*, 40 Mass. App. Ct. 734, 738 (1996).

2. *Access to the father's medical and psychiatric records.* In the interest of judicial economy, we consider the father's claim that the judge improperly delegated the task of examining his medical and psychiatric records to the GAL.

The father principally seeks the protection afforded by the psychotherapist-patient privilege, G. L. c. 233, § 20B.[9] The statute provides that, "in any court proceeding and in any proceeding preliminary thereto . . . , a patient shall have the privilege of refusing to disclose, and of preventing a witness from disclosing, any communication, wherever made, between said patient and a psychotherapist relative to the diagnosis or treatment of the patient's mental or emotional condition. This privilege shall apply to patients engaged with a psychotherapist in marital therapy, family therapy, or consultation in contemplation of such therapy." G. L. c. 233, § 20B, as amended through St. 1990, c. 177, § 361.

Section 20B contains an exception that is relevant here: "The privilege granted hereunder shall not apply to any of the following communications: . . . (*e*) In any case involving child custody . . . in which, upon a hearing in chambers, the judge, in the exercise of his discretion, determines that the psychotherapist has evidence bearing significantly on the patient's ability to provide suitable care or custody, and that it is more important to the welfare of the child that the communication be disclosed than that the relationship between patient and psychotherapist be protected." See *McMahon* v. *McMahon*, 1 Mass. App. Ct. at 649-650 (applying G. L. c. 233, § 20B[*e*], to issue of visitation).

Relying on the wording of that exception, the father argues that after he produced all the records previously ordered by the judge, the judge improperly allowed the GAL access, thereby delegating the judge's statutory duty to conduct an in camera review of those records. We agree. General Laws c. 233, § 20B,

---

[9]The father's references to several other privileges without identifying the records to which they might apply do not require us to discuss them. Compare *Adoption of Saul*, 60 Mass. App. Ct. 546, 554 (2004).

specifically states that the judge must exercise his or her discretion in making the privilege determination. See *Custody of a Minor (No. 3)*, 16 Mass. App. Ct. 998, 1002 (1983). If the volume of material produced in discovery is overly burdensome, the judge may appoint a separate GAL or a discovery master to aid in the process.[10] See generally G. L. c. 215, § 56A; Mass.R.Dom.Rel.P. 26(j) (2000); Mass.R.Dom.Rel.P. 53 (1997).

However, before the judge undertakes such an endeavor, the father has an obligation to assert the privilege. *Petitions of the Dept. of Social Servs. to Dispense with Consent to Adoption*, 399 Mass. 279, 290 n.21 (1987), and cases cited. "[S]ome action by the patient or client is necessary to 'exercise' the privilege therein created. The privilege is not self-executing." *Commonwealth* v. *Oliveira*, 438 Mass. 325, 331 (2002). "The actual assertion of the privilege is a requirement of the statute, not a meaningless formality or a foregone conclusion." *Id.* at 335. "Absent an affirmative assertion of the privileges established by G. L. c. 233, § 20B, . . . the court must treat such records as if they were unprivileged." *Id.* at 337. Upon the assertion of a privilege, the judge should inspect the records in camera to determine the applicability of the privilege. See *Commonwealth* v. *Clancy*, 402 Mass. 664, 666 n.2 (1988).

Requiring the father and his counsel to designate those records that may contain privileged information is not an onerous task. It is obvious that many of the documents will not contain protected information. "While the scope of this privilege is broad, it does not cover all hospital records concerning nonpsychiatric admissions simply because some psychiatric information appears in the hospital record.[11] The records are privileged if they contain the communications or notes of communications

---

[10]We caution, however, that it is ultimately the judge, and not a special master or GAL, who must make the determination as to which records are protected by the patient-psychotherapist privilege, and which are not. Cf. *Gustin* v. *Gustin*, 420 Mass. 854, 857-858 (1995) (judge cannot delegate duty to make "fair and equitable division of property" pursuant to G. L. c. 208, § 34).

[11]Section 20B defines "communications" as including "conversations, correspondence, actions and occurrences relating to diagnosis or treatment before, during or after institutionalization, regardless of the patient's awareness of such conversations, correspondence, actions and occurrences, and any records, memoranda or notes of the foregoing." For a discussion of the types and range of protected communications, see *Adoption of Saul*, 60 Mass. App. Ct. at 550-555.

between the patient and a psychotherapist." *Petitions of the Dept. of Social Servs. to Dispense with Consent to Adoption*, 399 Mass. at 287. Ultimately, "[t]he exercise of the privilege established by . . . § 20B . . . does not preclude admission of such parts of a psychiatric record as are 'conclusions based on objective indicia rather than on communications from the [patient].' *Adoption of Abigail*, 23 Mass. App. Ct. 191, 198-199 (1986)." *Adoption of Seth*, 29 Mass. App. Ct. 343, 353 (1990). See *Adoption of Saul*, 60 Mass. App. Ct. 546, 551-553 (2004) (diagnostic terms, without more, are not privileged).

*Conclusion.* The status of the father's claim for visitation should be clarified. If there is no genuine issue of visitation, then there is no basis for an order requiring disclosure of the father's medical or psychiatric records. If there is a genuine issue regarding visitation, then the judge must make a determination whether the medical and psychiatric records are relevant to the resolution of the terms of visitation. The judge should issue an order, reasonably tailored in time, for the father to produce the records.[12] The father may then segregate the records he alleges are privileged and make an appropriate claim of privilege supported by affidavit. It is the judge's responsibility then to determine whether the records are privileged and, if so, whether their relevance and importance to the welfare of the children outweigh the privilege. If the judge determines that privileged material should be disclosed to the GAL, he or she may enter such an order with appropriate limitations on its disclosure and orders of confidentiality.

The order dated January 11, 2006, is vacated, and the matter is remanded to the Probate and Family Court for further proceedings in accordance with this opinion.

*So ordered.*

---

[12]We note that the father has already submitted a schedule of "Medical Records Requested," see note 7, *supra*, which appears to contain substantially the information originally requested in an interrogatory (see note 3, *supra*). Such information as names of physicians, dates of treatment and hospitalizations, and diagnosis on admission is not privileged and might provide an adequate basis on which the judge can determine whether information should be sought directly from any of those providers and from which a more narrow request may be crafted.